15 So.2d 572

## WILLIAMS v. STATE.
### 6 Div. 26.

Supreme Court of Alabama.
June 30, 1943.

Rehearing Denied Dec. 2, 1943.

Wm. N. McQueen, Acting Atty. Gen., and Forman Smith, Asst. Atty. Gen., for the State.

G. C. Boner, of Birmingham, for appellant.

34

LIVINGSTON, Justice.

Appellant, Leon Williams, was tried and convicted in the Circuit Court of the Tenth Judicial Circuit of Alabama, for having forcibly ravished Jo Anne Wilder, a woman. He was sentenced to suffer the death penalty.

For the State the proof tended to show that late in the afternoon, or early in the evening, of November 10, 1941, Jo Anne Wilder was proceeding along Fifty-third street in Birmingham, Alabama, when appellant placed his hand over her mouth, stuck a knife in her back, and forced her into an alley, where, after abusing her, he ravished her. Jo Anne Wilder testified in part as follows: "It was dark when this man attacked me. * * * I am positive that this man's privates entered my privates. * * * He did not have intercourse with me before I fainted. * * * I know he had intercourse with me for no one else has. * * * I swear positively this man here (appellant) is the one that attacked me. * * * I saw and identified this man when he was stooping down over my body. * * * Then I identified him at the city jail in a line of eight or ten men. * * * I identified him out there when the car passed down the alley. They did not throw the light from the car on us but he got down close to my face and I could see him real good." Jo Anne Wilder's testimony as to being ravished was corroborated by the testimony of Dr. W. H. Garlington, Charles G. Milan, and other evidence.

The defense offered was that of an alibi. Appellant did not testify in his own behalf. Three witnesses for appellant testified substantially as follows: That in company with appellant they had been engaged in the excavation of a basement in Jasper, Alabama, on the day of the crime, commencing work at approximately 10:50 A.

M., leaving Jasper by automobile shortly after 6:00 P.M., according to their best judgment, and arriving in Birmingham about 7:00 P.M. They were put out of the automobile at the West End Baptist Hospital in Birmingham, and shortly thereafter caught a street car to Sixty-third Street, where they arrived around 8:00 P.M. Although there is some conflict in the testimony, we think it is clear that the crime was committed between the hours of 6:00 P.M. and 7:30 P.M.

■ The trial court sustained the State's objection to the following question propounded by defense counsel to witness Jo Anne Wilder on cross-examination: "Who has told you, little lady, that you could swear to the best of your knowledge and belief in a case like this?" The question assumes, without supporting evidence, that someone had told the witness she could so testify, and the objection to it was properly sustained. Bostic v. State, 94 Ala. 45, 10 So. 602; Ham v. State, 21 Ala.App. 103, 105 So. 390.

■ The State's objection to the following question propounded to prosecutrix on cross-examination was sustained: "What conversation did you have with detectives about this case?" There was no error in sustaining the objection. The question was too general. It did not disclose that the answer sought to be elicited would be material. The question was not answered, and it is not made to appear what the answer would have been. When a question is so general that an answer cannot be said to be prima facie admissible, the party is required to inform the court what is proposed to be proved, so that the court may see whether the evidence sought to be elicited is proper. This question was susceptible of an answer that would have been wholly immaterial, and the court was not informed of the materiality. Brindley v. State, 193 Ala. 43, 69 So. 536.

■ Defendant's refused charge 3 was fully and correctly covered by the court's oral charge, and by defendant's given charge 1. There was no error in refusing charge 3.

■ Defendant's refused charge 4 deals with the question of the competency of defendant as a witness in his own behalf, and the credit to be accorded his testimony. The defendant did not testify. The

charge is abstract and was properly refused.

■ Defendant's refused charge 6 reads as follows: "I charge you, gentlemen of the jury, to acquit the defendant unless the evidence excludes every reasonable supposition, but that of the defendant's guilt." The charge is unsound and has been repeatedly condemned. Hollingsworth v. State, 227 Ala. 54, 148 So. 845; Davidson v. State, 211 Ala. 471, 100 So. 641. See cases cited in 6 Ala.Dig., Criminal Law, page 762, ☞789(15).

■ We have carefully examined the several excerpts from the court's oral charge to which defendant reserved exceptions. There is no merit in the insistence that reversible error here intervened; nor did reversible error intervene in the action of the trial court in sustaining the solicitor's objection to the following statement of defense counsel in his argument to the jury: "Now the State of Alabama could go to the Holland Furnace Company and find out about these boys working there—what they would testify." The colloquy between the trial judge and counsel for defendant following the court's action in sustaining the last mentioned objection contains nothing upon which to predicate reversible error.

Defendant's motion for a new trial is rested on the grounds that the verdict of the jury is contrary to the law in the case; contrary to the law and evidence in the case; contrary to the great weight of the evidence in the case; errors in the court's oral charge, and newly discovered evidence.

■ To warrant a new trial, newly discovered evidence must be undiscovered with reasonable diligence before trial, probably productive of different result, material, competent, and not merely impeaching or cumulative. Folmar v. State, 22 Ala.App. 317, 116 So. 110, certiorari denied 217 Ala. 410, 116 So. 112. The alleged "newly discovered evidence" consists of the affidavits and testimony of Albert McSwain and Emmett McSwain, to the effect that they were with defendant in Jasper on the day of the alleged crime; that defendant came back to Birmingham 'in the car of Albert McSwain on that day; that the defendant left the car of McSwain at the Baptist West End Hospital in Birmingham around 7:30 P.M. The evidence shows in and of itself a lack of requisite diligence. The other grounds of the motion for a new trial do not warrant any special treatment.

. The bill of exceptions shows the following proceedings:

"Mr. Gus J. Prosch, a witness for the defendant, being first duly sworn, testified on direct examination as follows: My name is Gus Prosch, I am an attorney, and I have been practicing law here in Birmingham about thirty years. I remember being in Judge Abernethy's court last year when you were defending Leon Williams, charged with rape, but I don't remember the exact date. I remember your asking Miss Wilder about identifying this defendant, and she said she couldn't positively identify him because it was dark.

"On cross-examination the witness testified: I don't remember how many cases were tried that day, but I remember there were two cases of rape,—this young lady and an elderly lady. I remember practically what both of them said. Judge Abernethy bound them both over and fixed their bonds at two hundred dollars.

"The witness was then asked the following question: *And this boy here was charged with ravishing another woman, wasn't he?*

"Defendant objected to this question on the ground that it was incompetent, immaterial, irrelevant and illegal; and, because of a prejudicial statement of that kind, asked that the court declare a mistrial in this case. The court sustained the objection to the question but overruled defendant's motion for a mistrial, to which ruling on said motion the defendant duly reserved an exception." (Italics ours).

"Mr. G. C. Boner, defense counsel, a witness for the defendant, being first duly sworn, testified: I defended this boy on the preliminary trial on December 18th in Judge Abernethy's court; and I asked the young lady, and pointed at him at the time, could she positively identify him as the man that ravished her, and she said it was dark and she could not.

"On cross-examination the witness testified: He was bound over to the grand jury.

"The witness was then asked the following question: He had two cases there, didn't he?

"Defendant objected to this question as being incompetent, immaterial, irrelevant and illegal.

"The court overruled the objection, to which ruling the defendant duly reserved an exception.

"The witness then answered: Yes, sir."

It is to be noted that the question propounded to Mr. Prosch does not inquire as to whether or not defendant was tried for another offense of rape. Such other trial may, under proper circumstances, furnish a basis for legitimate cross-examination for the purpose of testing the information, knowledge or recollection of the witness. The question here asked was whether or not defendant was *charged* with ravishing another woman, and not whether he was *tried* for such offense. To the same effect is the question propounded to witness Boner on cross-examination, and to which question defendant's objection was overruled with the results above indicated. We find no sound basis upon which to predicate the questions asked witnesses Prosch and Boner.

█ Evidence of other and distinct criminal offenses, at other times and places, is admissible in evidence only in exceptional cases and for limited purposes. Among these are cases where such evidence may throw light on the motive, intent, scienter, or identity, and so tend to establish the guilt of the party of the offense for which he is being tried. Jackson v. State, 229 Ala. 48, 155 So. 581; Robinson v. State, 243 Ala. 684, 11 So.2d 732, and cases there cited.

In the case of Simon v. State, 181 Ala. 90, 61 So. 801, this Court said:

"When a great crime has been committed the law casts upon the solicitor grave responsibilities, and he realizes that the State looks largely to him to see that the perpetrator of such crime is properly and legally punished. In such a case, especially during the excitement of the trial, counsel on both sides sometimes unconsciously say things, and ask questions, which the strict letter of the law does not warrant. In the present case the solicitor had before him a case of great enormity, and was prosecuting a crime, the details of which were sufficient to arouse the indignation of all law-abiding men, and in such extreme cases counsel, as we have already said, are liable to forget themselves. The law—human and divine—is, however, the salt that has saved humanity from barbarism; and courts and officers of courts in their efforts to enforce the law, even in extreme cases, should, if possible, so guard their utterances that they may be sure that they themselves do not impinge the law which they are seeking to enforce. * * *

"The law places ample power in the hands of the trial judge to protect defendants in criminal cases from acts of any sort which may tend to improperly influence the jury against them; and no higher duty is imposed upon a trial judge than the duty which the law places upon him to discharge, upon motion, or even ex mero motu, a jury when, whether through inadvertence or intentional act, anything is done by any officer of the court without legal warrant which tends to improperly influence the jury."

See, also, Bozeman v. State, 25 Ala.App. 281, 145 So. 165, and Watts v. Espy, 211 Ala. 502, 101 So. 106.

The question here presented is wholly unlike the questions presented in the cases of Wilkins v. State, 29 Ala.App. 349, 197 So. 75; Johnson v. State, 242 Ala. 278, 5 So.2d 632, 635; Robinson v. State, 243 Ala. 684, 11 So.2d 732, and Daniels v. State, 243 Ala. 675, 11 So.2d 756.

█ So far as this record discloses, the question asked Mr. Prosch on cross-examination not only called for illegal and irrelevant testimony, but which question without answer carried with it an inference which only tended to prejudice the jury against the appellant; and the question to Boner and his answer tended to increase that prejudice. No iron-clad rule exists by which the prejudicial qualities of improper questions or remarks or arguments of counsel can be ascertained in all cases: much depends upon the issues, parties and general circumstances of the particular case. Moulton v. State, 199 Ala. 411, 74 So. 454; Bridgeforth v. State, 16 Ala.App. 584, 80 So. 158; Alabama I. & F. Co. v. Benenante, 11 Ala.App. 644, 66 So. 942; Birmington Ry. L. & P. Co. v. Gonzalez, 183 Ala. 273, 61 So. 80, Ann.Cas. 1916A, 543.

Under the circumstances of this case, a negro charged with ravishing a white woman, the question propounded to Mr. Prosch, without an answer, carried with it an inference highly prejudicial to appellant, and the action of the trial court in sustaining objection to it was not a sufficient antidote to the poison that had been injected into the minds of the jury. Verdicts ought not to be won by such methods,

and when an attorney, in the heat of trial, goes to such extraordinary lengths it is the duty of the trial judge to declare a mistrial. It is one of the highest judicial functions to see the law impartially administered, and to prevent as far as possible all improper, extraneous influences from finding their way into the jury box. See the cases of Metropolitan Life Ins. Co. v. Carter, 212 Ala. 212, 102 So. 130; Wolffe v. Minnis, 74 Ala. 386; Birmington Ry., L. & P. Co. v. Drennen, 175 Ala. 338, 57 So. 876, Ann.Cas.1914C, 1037; Florence Cotton & Iron Co. v. Field, 104 Ala. 471, 16 So. 538; Moulton v. State, supra.

For the trial court's failure to enter a mistrial when requested by counsel for appellant, the writer, with whom Justice THOMAS concurs, thinks the judgment should be reversed. The majority of the Court, however, entertain a contrary view, which is expressed as follows:

GARDNER, C. J., and BOULDIN, BROWN, FOSTER and LAWSON, JJ., concur in the opinion of Mr. Justice LIVINGSTON, except as to the holding therein that the court erred in not declaring a mistrial because of the question asked the witness Prosch by the solicitor on cross-examination; and the overruling of defendant's objection to the question to the witness G. C. Boner, defendant's counsel, on cross-examination.

The court sustained the defendant's objection to the question asked the witness Prosch and hence there was no answer to this question. We cannot assume that the jury under such circumstances would look to such incident as evidence going to prove anything, and to say that they would be prejudiced by such incident is to seriously challenge the system of jury trials which has so long stood as a bulwark of liberty under English and American criminal jurisprudence.

The other witness was the defendant's attorney and the question was: "He had two cases there didn't he?" This question to the witness on cross-examination was not subject to the objection made because it related to a test of the accuracy of the memory of the witness in respect to what he had testified occurred on the preliminary trial—material to the identity of defendant.

There being no reversible error, the judgment of conviction and sentence is affirmed.

Affirmed.

GARDNER, C. J., and BOULDIN, BROWN, FOSTER, and LAWSON, JJ., concur.

THOMAS and LIVINGSTON, JJ., dissent.