159 So.2d 628

Jesse Howard BOYETT

v.

STATE.

8 Div. 907.

Court of Appeals of Alabama.

Jan. 7, 1964.

O. S. Burke, Greensboro, for appellant.

Richmond M. Flowers, Atty. Gen., for the State.

Glenn F. Manning, Huntsville, for appellant.

Richmond M. Flowers, Atty. Gen., Bernard F. Sykes, Asst. Atty. Gen., and Roy E. Hicks, Legal Research Aide, Montgomery, for the State.

CATES, Judge.

Boyett, found guilty of assault and battery, appeals. His punishment: a fine of $250.00 and six months hard labor for the county.

The tendency of the State's evidence was that Boyett went into a hospital room without anyone asking him in. It was late at night. Finding a female patient in bed there, he started taking her pulse. "Then he said he had to go see a patient."

The prosecutrix further testified that on his return she asked him who he was. He replied, "Young Dr. G————."

Thereupon, "He * * * more or less started to give me a physical examination." This involved palpation, a chest examination without stethoscope, and further steps unneedful to elaborate.

Boyett's touching and his accompanying words are sufficient, if believed 'beyond a reasonable doubt, to support an inference of indecent assault.

We have two questions:

(1) Did the female consent?

(2) Did the trial judge err in refusing a motion for mistrial because the deputy solicitor, in cross examining Boyett's mother, referred to an "obscene phone call incident?"

## I.

### Consent From Personation

The complainant testified that she came to realize that Boyett was not a physician, distrusting his claim to be "Young Dr. G————." Under examination in chief, she went on (without objection):

"Yes, I was afraid. But I was afraid to panic, so I was trying to be calm and to humor him until I could think of some way to get him out of there without something happening.

\* \* \* \* \* \*

"Q Mrs. P———, how long had you been in the hospital unable to walk about?

"A At that time?

"Q Yes, at the time he did this.

"A At that particular time I had been in four days.

"Q Had you been up walking around at all?

"A No, not during those four days.

"Q Do you mind telling the jury what your problem was, what your illness was?

"A Well, I was put in because I was dehydrated but, as I said, I was re-cuperating from pneumonia.

"Q And were you in a weakened condition at this time?

"A Yes, extremely."

Lewis v. State, 30 Ala. 54, is cited.[1] There a conviction of assault to rape was reversed because of the refusal of a charge (No. 2).

This instruction would· have let the jury weigh consent even though sought by the ruse of personating the husband. But the woman in Lewis, supra, having in mind the same physical act as the interloper, the court held that this assent was the same as consent.

■ Here, the patient permitted and sub-mitted to Boyett's touching her for medical purposes only. If during the feigned examination she sensed he was a fake, we cannot see how subsequent submission, if any, could relate back so as to carry the original limited permission into an unlimited license.

Thus, 6 C.J.S. Assault and Battery § 90, Consent, under the subheading Indecent Assault, says: " \* \* \* a different rule [i. e., from consent as defense] applies where the consent was obtained by fraud, as in case of pretended medical treatment." —citing Bartell v. State, 106 Wis. 342, 82 N.W. 142.

From 6 Am.Jur.2d, Assault and Battery, § 67 (Consent, In Sexual Assault), we quote, in part:

" \* \* \* Where there is no statutory provision determining the effect of consent of the victim, the rule that consent of the alleged victim may be a good defense in a prosecution for an assault is most frequently applied in prosecutions for sexual assaults provided that the consent was given by a person legally able to consent, and that the consent was not obtained by duress or by fraud. \* \* \* "

Commonwealth v. Gregory, 132 Pa.Super. 507, 1 A.2d 501, says in part:

"The appellant asks us to assume that this familiarity was all with the consent of Mrs. Harkins and to conclude that it was therefore not assault and battery or indecent assault. We are of the opinion that the evidence warranted a conclusion by the trial court that Dr. Gregory secured such consent as he did in fact obtain to study the mechanics and efficiency of the artificial limb by knowingly and fraudulently leading Mrs. Harkins to believe that he was a doctor of medicine and surgery. Not only was the title of doctor used so as to convey that meaning and that meaning alone, but the defendant did not do—at least he does not say he did— what we would have expected one of his true profession to do. He was an utter stranger to these people and introduced himself to them. The natural

1. This opinion led to the adoption of what is now Code 1940, T. 14, §§ 400–401.

introduction for him to have employed would have been to say he was a minister of the gospel if he did not intend to deceive. * * *

"Such being the facts which we must assume the court found, any consent claimed to have been given was obtained by the perpetration of a fraud, was vitiated by such fraud and is not a defense to the charge of assault and battery or indecent assault. The deceit practiced was a fraud on the will of Mrs. Harkins equivalent to force. Com. v. Stratton, 114 Mass. 303, 19 Am.Rep. 350. The legal reasoning involved is the same as that followed in the consideration of larceny by trick. * * *

"The conclusion at which we have arrived is in harmony with that reached in other states. In the case of Bartell v. State, 106 Wis. 342, 345, 82 N.W. 142, the defendant under the pretense of giving a massage treatment to a young woman 18 years of age who was afflicted with a nervous ailment, caused her to expose her body to him and permit him to examine and touch her naked form. In addition he took some further undue liberties with her person. The court there sustained a conviction for indecent assault and in that connection said [[82 N.W.] page 143]: 'The law relating to physical violations of the persons of females, accomplished by such a species of fraud or imposition as may be exercised by a person under the pretense of necessity or authority, where the violator, because of his position, has exceptional opportunities for thus imposing upon his victim, is too well known to need any discussion here.' * * *"

In R. v. Case (1850), 4 Cox C. C. 220 (a holding expressly approved by the Court of Criminal Appeal in R. v. Williams [1923], 1 K. B. 340), we find:

"COLERIDGE, J.—The girl was under medical treatment, and she makes no resistance only in consequence of the confidence which she reposed in the defendant as her medical adviser. If there had been no consent the defendant's act would have been indisputably an assault; and under the circumstances, therefore, his conduct amounted to an assault according to cases which I should be sorry to see infringed."

The rulings—claimed to be wrong on the theory of the complainant's having consented even though deceived—are correct in law. Hence, the jury was not misled.

## II.

### Question Which Assumes a Fact not in Evidence, i. e., that Defendant had Made an Obscene Phone Call

After the State rested, the court ruled out assault with intent to ravish, leaving assault and battery as the sole charge. The record shows the following during the cross-examination of defendant's mother, Mrs. Mabel Boyett, who was the first defense witness:

"Q When you learned of this incident where he was charged with molesting a woman at the Fifth Avenue Hospital, what is the first thing you did after that?

"A Well, naturally, I was upset. I couldn't believe that. I couldn't believe what I was hearing.

"Q You didn't believe it?

"A No, I couldn't believe it.

"Q Well, you knew about the obscene phone call incident; surely you didn't think this was too far—

"MR. MANNING: We object to that. We object and we move for a mistrial.

"MR. THOMAS: Your Honor—

"THE COURT: The jury will step out in the jury room.

"MR. MANNING: We move for a mistrial—

"THE COURT: Let the jury leave.

"(THE JURY LEAVES THE COURT ROOM.)

"MR. THOMAS: I would like to explain the reason that this should be done. The reason we brought it out, it has bearing on her testimony that she thought there was nothing, that she was surprised about this; whereas, we know she knows of the phone call incident, which is an incident of similar nature.

"MR. MANNING: Just how, Mr. Thomas, would her being surprised, now how would that be impeachment on any material point one way or the other.

"MR. THOMAS: We have a right to evaluate her testimony.

"MR. MANNING: Along a certain line, but not that way. There is no way this man could have a fair trial.

"THE COURT: I think I will grant your motion. I hate to have to try the case over, but I don't think there is either and I don't know of any way to stop it when you all ask them. I hate to have this woman come back here and go through the trial again, but I don't think it should be—

"MR. THOMAS: Don't you believe it can be eradicated from the mind of the jury, if the jury is instructed they should exclude this since she hasn't answered the question?

"MR. MANNING: We all know how that goes. We all are human. We are lawyers and we couldn't put it out of our mind if we were sitting on the jury, Mr. Thomas.

"MR. THOMAS: Your Honor, I feel it would be eradicated from their mind, certainly if Your Honor instructed them to disregard it.

"THE COURT: Well, don't mention it again and don't even get close to it any more, because it's just not worth it to come back and go through it again, but I don't want any other incident in this case whatever and anything about any indecent phone calls or anything. And, of course, you have left it now where it is subject to a reversal.

"MR. MANNING: If there is a conviction, it will be appealed.

"THE COURT: You have left it where it is subject to reversal, and that's what I've got to decide, as to whether to try to instruct them and cure the error or whether or not to start over.

"MR. MANNING: Judge, I don't look forward to having to go through all this again, but there is no way on earth, under the circumstances, that this man could be given any kind of a fair trial on this issue itself. It isn't as if Mr. Thomas hadn't really done it deliberately, because we all know he knew why he did it.

"MR. THOMAS: Certainly, since I was the only one that had said this—

"MR. MANNING: This man has certain rights, whether Mr. Thomas wants him to have them or not.

"MR. THOMAS: It is a question of whether or not the Judge can eradicate it from the mind of the jury.

"THE COURT: Well, bring the jury back out.

"(THE JURY RETURNS TO THE COURT ROOM.)

"THE COURT: Now, gentlemen, I want to sustain the objection of the defendant to that question. I want to instruct you that that question has no place in the trial of this case and you

are to exclude it from your thoughts and from everything you have heard.

"Now, I want to know this. Is there any juror who feels he cannot go ahead and try this case on the evidence which he has heard and exclude that question from his mind and still decide the case? If there is, will you raise your hand? Can all of you go ahead and try the case, based upon the evidence which has come to you from the stand, and exclude that question which has been asked and just erase the question from your mind? If you cannot, raise your hand.

"I overrule your motion.

"MR. MANNING: And we except."

At the risk of inbreeding sources of law, we quote from Alday v. State, 42 Ala.App 21, 151 So.2d 220:

"We attach importance to (1) the trial judge's here asking the jurors if they had been swayed; (2) the form of oath, Code 1940, T. 30, § 58; (3) the charge that the verdict must come from the evidence, and (4) the presumption of the jurors being reasonable. We find no error in denial of the motion for mistrial."

 The trial judge by (1) having the jury withdraw, (2) sustaining defense counsel's objection to the question, (3) warning the deputy solicitor, (4) caucusing the jurymen, and (5) directing them to disregard any implication of fact from the unanswered question—in combination—made the question [2] harmless within the meaning of Supreme Court Rule 45. See Williams v. State, 245 Ala. 32, 15 So.2d 572, headnote 12; Adams v. State, 161 Tex.Cr.R. 120, 275 S.W.2d 687.

### III.

### Charges

The essence of what we have set forth in I above as to consent from personation

covers any claim of error in the part of the oral charge to which Boyett excepted.

Also, we consider there was no error in refusing the written charges which Boyett tendered on trial.

We have carefully examined the entire record as required by law and consider that the judgment below is due to be

Affirmed.

2. The reports are replete with opinions which (a) sustain a trial judge's ruling out such a question (e. g., Southern Elec. Generating Co. v. Leibacher, 269 Ala. 9, 110 So.2d 308, headnote 11), or (b) reverse for failing to rule out (e. g., Campbell v. State, 32 Ala.App. 461, 463, 27 So. 2d 220, headnotes 4 and 5; Wilbanks v. State, 42 Ala.App. 39, 151 So.2d 741, headnote 7). See McElroy, Law of Evidence in Ala. (2d Ed.), § 121.06; Wigmore, Evidence (3d Ed.), §§ 771 and 780.