[EDITORS' NOTE: THIS PAGE CONTAINS HEADNOTES. HEADNOTES ARE NOT AN OFFICIAL PRODUCT OF THE COURT, THEREFORE THEY ARE NOT DISPLAYED.] *Page 437 
On the night of the 21st of April, 1981, Walter Thomas was shot in the back while standing in a crowd of people. Barry Darnell Wysinger, the appellant, was indicted and convicted for his murder. Sentence was life imprisonment. Three issues are presented on appeal.
 I
Wysinger asserts that the trial judge erred in not granting a mistrial based on the improper conduct of the prosecutor in cross examining defense witnesses. He argues that the prosecutor improperly questioned defense witness Cassandra Webb about a prior inconsistent statement which, in fact, did not exist and that the prosecutor improperly questioned defense witnesses about prior shooting incidents not supported by evidence.
 A The Inconsistent Statement
The record shows that Mrs. Webb never made any prior inconsistent statement. However, during his cross examination of Mrs. Webb, the prosecutor asked her if she had told the police that she heard Adell Abrams telling Wysinger not to shoot because there were too many people out there and that Wysinger was yelling that he did not give a damn. Mrs. Webb admitted that she talked to the police the night of the shooting but denied making any statement and denied making the specific statement the prosecutor attributed to her in his question. Mrs. Webb's testimony was elicited without objection.
State witness Adell Abrams did testify that she told Wysinger to "put the gun down. You will hurt somebody" and that he replied, "I am going to kill all those mother-_____." On cross examination by defense counsel she testified that she did not hear Wysinger say that he did not give a damn. Two other state witnesses corroborated Mrs. Abrams' testimony.
As part of his defense, Wysinger called a former Tuscaloosa police officer who stated on cross examination by the State that he investigated the homicide. He testified that Mrs. Abrams told him that she told Wysinger "to put the gun up. There was too many people around" and that Wysinger replied, "I don't give a damn" and started shooting.
 B The Other Shooting Incidents
The first witness for the defense was Shirley Wysinger, Wysinger's sister. On cross examination, Ms. Wysinger testified, without objection by defense counsel, that she had never seen Wysinger with a pistol and that she had never seen him shooting at street lights or signs, or carrying a pistol around the neighborhood or in his automobile. The prosecutor also questioned defense witness Cassandra Webb about this same matter and she also denied ever having seen Wysinger with a pistol.
On direct examination Wysinger denied owning a pistol or having one in his possession at the time of the homicide. On cross examination, Wysinger denied ever owning a pistol and testified in response to the prosecutor's questions that Otis Tubbs, his brother-in-law, had never talked to him about shooting at signs or shooting in front of his mother-in-law's house.
In rebuttal, the prosecution proved that, about one week prior to the killing, Curtis *Page 438 
Carpenter saw Wysinger in the area with a pistol shooting at a bus sign. To this testimony defense counsel interposed a general objection. This was the only objection to any of the testimony about the "prior shooting incidents." Mr. Carpenter testified that he stopped Wysinger from shooting and told him "that it was kind of dangerous for him to be firing firearms in front of kids like that."
The issue argued on appeal was first raised at trial when defense counsel requested a mistrial after both parties had rested their case. Defense counsel argued that, since the State had not introduced any evidence that Mrs. Webb had made a prior inconsistent statement and had proven only one prior shooting incident, the prosecutor's questions were without any factual basis and were not made in good faith.
After the trial judge denied the mistrial, defense counsel requested he instruct the jury that Mrs. Webb did not make any statement to the police. The judge found that defense counsel "should have objected to it at the time" and refused to instruct the jury that Mrs. Webb did not make any statement as that would constitute a "comment on a particular part of the evidentiary proceedings."
We find that, even if the prosecutor's conduct was improper, the extreme remedy of a mistrial was not required. "It is unprofessional conduct to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence." Young v. State,363 So.2d 1007, 1012 (Ala.Cr.App. 1978); Bezotte v. State, 358 So.2d 521,525 (Ala.Cr.App. 1978). Both of those cases involved questions about prior convictions. Young involved the use of prior convictions about which the prosecutor continued to question the defendant when he had no legal evidence of such convictions, knew he could not support them by evidence, and had been instructed by the trial court on several occasions to cease going into the area of prior convictions. In Bezotte, the youthful offender conviction was inadmissible and the prosecutor had been warned to avoid its use. In both of those cases, the prosecutor's conduct was in violation of the trial judge's instructions.
Laying prejudicial allegations before the jury "by dint of cross-examination without being prepared to prove them is generally regarded as reversible error." United States v.Brown, 519 F.2d 1368, 1370 (6th Cir. 1975). It is improper for the prosecutor "to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth." United States v. Harris, 542 F.2d 1283,1307 (7th Cir. 1976); 6 J. Wigmore, Evidence Section 1808 (Chadbourn rev. 1976). "Where the State, in laying a foundation for impeachment, insinuates the existence of prior inconsistent statements by the witness and the witness denies making the statement, the State must produce evidence that the prior inconsistent statement was made." People v. Sprouse,94 Ill. App.3d 665, 50 Ill.Dec. 76, 418 N.E.2d 1070, 1077 (1981); see also United States v. Bohle, 445 F.2d 54, 73-74 (7th Cir. 1971). In such cases, the State may have a duty to complete its impeachment of the witness or show that the prosecutor had "evidence of or reasonable ground to believe the truth of its implication." Lee Won Sing v. United States, 215 F.2d 680, 681
(D.C. Cir. 1954); see United States v. Mackey, 571 F.2d 376, 386
(7th Cir. 1978).
However, not every violation of these rules is "so grossly prejudicial as to require the trial court to declare a mistrial as a matter of law." United States v. Kelly, 459 F.2d 10, 11
(9th Cir. 1972). In reviewing allegedly improper prosecutorial comments, conduct, and questioning of witnesses "(o)ur task is to consider their impact in the context of this particular trial", and "not view the group of allegedly improper questions and comments in the abstract." United States v. Davis,546 F.2d 583, 593 (5th Cir. 1977). "(W)e must assess the impact of the questions in the context of the entire trial." United States v.Bosby, 675 F.2d 1174, 1185 (11th Cir. 1982). *Page 439 
Within the confines of this case, the prosecutor's conduct does not amount to reversible error. First of all, there was a reasonable basis for the questions concerning the prior shooting incidents even though that basis was not as broad as the prosecutor's questions. "While the prosecuting attorney should not endeavor to introduce legally inadmissible evidence, or testimony known to be untrue, he should be allowed full range within the law to bring out all the material evidence he has good reason to believe will shed light on the commission of an alleged offense." 23A C.J.S. Criminal Law § 1087 (1961).
In regard to the alleged prior inconsistent statement of Mrs. Webb, the record reflects nothing that would indicate any intentional misconduct by the prosecutor to mislead the jury. The record does reflect that the prosecutor learned that Mrs. Webb did not make the statement he attributed to her only after the defense had rested its case. Defense counsel made this clear in his motion for a mistrial: "Also at the bench conference this afternoon the Defense rested. I think Mr. Summerford (prosecutor) indicated for the Record he has subsequently learned that the statement which he was using to question Mrs. Webb was not in fact made by her but some other witness."
By his questions, the prosecutor added no substantive evidence which was not properly before the jury when the trial ended. Bradford v. Stone, 594 F.2d 1294, 1296 (9th Cir. 1979). Other defense witnesses corroborated Mrs. Webb's version of the manner in which the shooting occurred. Viewed within the context of the entire trial and the evidence against Wysinger, the prejudicial effect of the prosecutor's conduct must be deemed insignificant. United States v. Cardarella,570 F.2d 264, 268 (8th Cir. 1978). "The prosecutor's naughty words were in effect a flyspeck on this record, not a blot." United Statesv. Natale, 526 F.2d 1160, 1172 (2nd Cir. 1975), cert. denied,425 U.S. 950, 96 S.Ct. 1724, 48 L.Ed.2d 193 (1976).
The trial judge is allowed the exercise of broad discretion in determining whether or not to grant a mistrial. Woods v.State, 367 So.2d 982, 983-84 (Ala. 1978). "No iron-clad rule exists by which the prejudicial qualities of improper questions or remarks or arguments of counsel can be ascertained in all cases: much depends upon the issues, parties and general circumstances of the particular case." Williams v. State,245 Ala. 32, 36, 15 So.2d 572 (1943). In determining whether the accused was prejudiced by prosecutorial misconduct, "we must ordinarily give great deference to the . . . judge's handling of the alleged misconduct during the trial. The . . . judge is ordinarily in a much better position to understand the circumstances surrounding the alleged misconduct and to evaluate its impact." United States v. Tham, 665 F.2d 855, 860
(9th Cir. 1981). We find that the prosecutor's conduct did not result in "ineradicable prejudicial error" as Wysinger argues and further find no abuse of discretion by the trial judge in refusing to grant the mistrial.
 II
The trial judge properly denied Wysinger's requested charge on criminally negligent homicide. The State's evidence shows that Wysinger deliberately fired his pistol after having been warned of the danger he was creating. Wysinger denied ever having or firing any pistol. At trial, there was no defense presented that Wysinger was attempting to break up an argument and scatter the crowd and in the process a shot was fired accidentally or prematurely as is argued on appeal.
As we stated in Phelps v. State, 435 So.2d 158, 165
(Ala.Cr.App. 1983): "A killing is not accidental when the act causing death is done intentionally. Lewis v. State, 96 Ala. 6,10, 11 So. 259 (1891). Any contention that the death was accidental `ignores the nature of the enterprise that the defendant . . . (was) engaged in.' Sanders v. State,16 Ala. App. 511, 513, 79 So. 504 (1918)." Here, there was no rational basis *Page 440 
for a verdict of criminally negligent homicide.
 III
Count I of the indictment charged reckless murder under Alabama Code Section 13A-6-2 (a)(2). Count III charged intentional murder as defined in Section 13A-6-2 (a)(1). The jury found Wysinger "guilty of Murder as charged in Count I of the indictment." The trial judge granted defense counsel's motion to strike Count II of the indictment, which charged that Wysinger caused the death of Walter Thomas while intending to cause the death of William Granger. The trial judge denied the request to strike either the count for reckless murder or the count for intentional murder. On appeal, Wysinger argues that there is no evidence to show that he intended to kill Walter Thomas and that a jury verdict finding him guilty of such an intentional killing would not have been sustained by the evidence.
We agree that the evidence in this case would not have supported a verdict finding Wysinger guilty of intentionally killing Walter Thomas and therefore Count III of the indictment should have been stricken. However, the error was only harmless. Any error in refusing to direct an acquittal as to one count is harmless where the jury acquits the accused on that count or finds him guilty under another count. Treadwellv. State, 168 Ala. 96, 53 So. 290, 292 (1910); Segars v. State,409 So.2d 1003, 1005 (Ala.Cr.App. 1982).
Wysinger's conduct is a classic example of a dangerous act evincing a depraved mind regardless of human life, F. Wharton,The Law of Homicide, Section 130 (3rd ed. 1907), which, when that conduct causes the death of another person, constitutes murder in this state. Northington v. State, 413 So.2d 1169
(Ala.Cr.App. 1981), cert. quashed, 413 So.2d 1172 (Ala. 1982).
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.