In 1981, Samuel Daniel Crosslin was convicted for capital murder and sentenced to death under Alabama's 1975 Death Penalty Law. Alabama Code 1975, § 13A-5-31 (a)(10) ("Murder in the first degree wherein two or more human beings are intentionally killed by the defendant by one or a series of acts."). That conviction was reversed in Crosslin v. State,446 So.2d 675 (Ala.Cr.App. 1983). In 1984, Crosslin was retried for the same capital offense and again convicted and sentenced to death. That conviction must also be reversed.
Crosslin's conviction must be reversed because of the prosecutor's improper references to the prior lunacy proceedings involving Crosslin.
On cross examination, Crosslin admitted without objection that he went to "Bryces" after his preliminary hearing in August of 1981, and that he returned in January. On further cross examination, Crosslin also admitted, without objection, that he had been *Page 681 
seen by a "Dr. Glaister — a psychiatrist" and by a Dr. Thomas.
The crime occurred during the night of July 29, 1980. Dr. Richard Davy was a clinical psychologist at the Riverbend Mental Health Center. He examined Crosslin on October 15th and 22nd of 1984 for a total of eight hours.
On direct examination, Dr. Davy testified that Crosslin was psychotic and suffering from post traumatic stress disorder. In direct response to a question by defense counsel, Dr. Davy stated that, "to my knowledge, he [Crosslin] has not received any kind of mental health help. I don't know whether he has gotten any other kind of help; but he certainly has not had any mental help with the symptoms that I described."
The prosecutor began his cross examination of Dr. Davy by establishing that Crosslin had been examined by other experts:
"CROSS EXAMINATION
"BY MR. PATTON [District Attorney]:
 "Q. Doctor, you were aware that Mr. Crosslin had been examined prior to your examination some three times, weren't you?
"A. That — you mean the other trial?
 "Q. Since he has been arrested, you were aware of that, were you not?
"A. Yes.
 "Q. One time being for some months at Bryce Hospital, both by a psychologist and psychiatrist?
 "MR. STANSELL [Defense Counsel]: I believe he already answered that he knew it.
 "MR. PATTON: You were aware they found at that particular time that he was not suffering from any disorder either then or at the time of the crime — were you aware of that?
"A. Because you tell me that, yes, I am.
 "Q. All right, and they had examined him for some three months before they made that determination — if I tell you that —
 "MR. STANSELL: May it please the Court, I thought the purpose of cross examination was to ask questions, not to make statements.
 "MR. PATTON: Did you look at this, Doctor, did you try to find any information concerning that examination?
"A. No, sir, I don't —"
* * * * * *
 "Q. All right, you were aware that he was also examined by Dr. Glaister, who is a psychiatrist, and I believe — I don't know, is he your boss?
"A. He is the supervisor of the center, yes.
 "Q. And that's the reason you don't have to be licensed in the State of Alabama, because you work under a doctor of psychiatry, is that correct?
"A. That's correct.
 "Q. And that he at that time also found there was nothing wrong with Mr. Crosslin except that he told a very good story, essentially.
"A. I don't know, I wasn't there."
* * * * * *
 "Q. I show you two pieces of paper marked State's Exhibit 56, stapled together and ask you to read that, please, sir.
"A. Read it out loud or read it to myself?
"Q. No, sir, read it to yourself.
 "MR. STANSELL: I would like to interpose an objection before he asks him to testify. Wouldn't this be a double hearsay?
 "BY THE COURT: It has already been admitted, is that correct?
"MR. STANSELL: Not in this trial.
"MR. PATTON: I haven't —
"BY THE COURT: Oh, I'm sorry.
 "MR. PATTON: I haven't even introduced it and I'm going to ask some questions from it, if it please the Court.
 "MR. STANSELL: You're asking him to testify to hearsay.
 "BY THE COURT: I don't know what it is, it hasn't been identified to me. *Page 682 
"MR. PATTON CONTINUES: Doctor, what is it?
"A. It's a letter from Bryce Hospital.
"Q. Signed by whom?
 "A. Signed by Thomas L. Smith, M.D., Director of Secure Medical Facility, James C. Thompson, Staff Psychiatrist and Clifford Hardin, M.D., Staff Psychiatrist.
"Q. All right, sir, and who does it concern, Doctor?
 "MR. STANSELL: I'm going to object, Your Honor, again this is hearsay.
 "BY THE COURT: I don't believe it is. If you want to show me something.
 "MR. STANSELL: A report that is written by people that are not here is not hearsay, sir?
"MR. PATTON: Doctor, does it concern Sammy Crosslin?
"A. Yes, it does.
 "Q. And, Doctor, is it a report concerning his mental condition at that particular time?
"A. That's what it states.
 "Q. And what, in essence, does that report say, Doctor?
"MR. STANSELL: Objection.
"MR. BABCOCK [Defense Counsel]: Objection.
 "BY THE COURT: Do ya'll want to go into it outside the presence of the jury?
 "MR. PATTON: I think the Doctor can answer that question. I didn't ask him whether he agreed with it or not.
 "MR. STANSELL: He will be testifying from hearsay, Judge.
 "BY THE COURT: I would like to look at something, I believe it's an exception, if ya'll will give me a chance. Ladies and gentlemen of the jury, at this time I'm going to take up a matter outside your presence. Please don't discuss this case among yourselves. I'll send after you in a few minutes.
"(At this time the jury left the courtroom)
 "BY THE COURT: Let the record show we are outside the presence of the jury. Anything else you would like to present at this time?
 "MR. STANSELL: Yes, Your Honor, you know, we will interpose an objection not only to hearsay, but as double hearsay. And we've looked in McElroy and the report of a Lunacy Commission is not admissible unless one of those commissioners is here to testify from it. And to ask this gentleman to testify from that particular record is asking him to testify to hearsay. The proper predicate has not been laid for any admission or any kind of evidence which could be testified from this report. There is no predicate laid and therefore, it's inadmissible. And that's our grounds.
"MR. PATTON: We have not asked it be admitted.
 "MR. STANSELL: Any testimony off of that is inadmissible."
(Emphasis added.)
At the hearing held outside the jury's presence, it was established that State Exhibit 56 was the report of the lunacy commission of Bryce Hospital dated January 5, 1981, finding that Crosslin was competent to stand trial and that he understood right from wrong at the time of the offense. Although this report does not appear in the present record under review, it is apparently that same report admitted at Crosslin's first trial. At that first trial, the report of the lunacy commission of Bryce Hospital dated January 5, 1981, and marked State Exhibit 56, was admitted into evidence. An appellate court may take judicial notice of its own records.Shadle v. State, 284 Ala. 138, 140, 222 So.2d 722, 724 (1969);Reeves v. State, 264 Ala. 476, 481, 88 So.2d 561, 564 (1956), cert. granted, 352 U.S. 965, 77 S.Ct. 373, 1 L.Ed.2d 321, cert. dismissed, 355 U.S. 368, 78 S.Ct. 363, 2 L.Ed.2d 352 (1958).
At the close of this hearing, the following occurred:
 "MR. STANSELL: And the way it came that way, if it please the Court, is they had an expert witness here to testify from that report, who helped prepare that report. And again, Your Honor, we *Page 683 
renew our objection that the entire report is hearsay and to ask this good doctor to testify from it is double hearsay.
"BY THE COURT: I don't know what double hearsay is.
 "MR. PATTON: Don't worry with it, I'm not going to fool with it anymore. I want to ask him some more questions; if he knows about it, I'll ask him that way.
"BY THE COURT: I'm sorry, I didn't understand you.
 "MR. PATTON: Don't worry with it, bring them back. But this is the Court's file, because we went down there under court order.
"BY THE COURT: Bring the jury back in, please.
 "MR. PATTON: It's 80-167, which happens to be the Court's record in this particular case.
 "MR. BABCOCK: That's no exception to the hearsay rule, that I know of.
 "MR. PATTON: I think the court records would be admissible.
"(At this time the jury returned to the courtroom)
"BY THE COURT: Go ahead.
 "MR. PATTON CONTINUES: Doctor, I asked you sometime prior if you were familiar with the fact that Mr. Crosslin had been sent to Bryce's for — to determine whether or not he was sane before the first trial in this case, and you said you were?
"A. Yes.
 "Q. And I assume that you understand that report said he was sane and he —
"MR. STANSELL: Objection on what the report said.
 "MR. PATTON CONTINUES: Okay, that he was not sick, let's put it that way. All I'm trying to ask you, Doctor, is — let me ask you, you are aware of that report — that he had been sent down there for that particular purpose?
"A. Was I aware of that report?
 "Q. Just that he had been sent down there for that purpose?
"A. You're talking about at the first trial?
"Q. Yes, sir, before the first trial.
"A. I assume that he was tested, yes.
 "Q. All right, sir, and you're aware that assessment is different from yours?
"A. Part of it is, yes, sir."
* * * * * *
 "Q. And you understand that he was at Bryce's some three months before when they reached a different opinion?
"A. Yes.
"MR. PATTON: I believe that's all.
"RE-DIRECT EXAMINATION
"BY MR. STANSELL:
 "Q. Dr. Davy, because he was at Bryce's for three months, does that necessarily mean they examined him continuously for a period of three months?
 "MR. PATTON: I'm going to have to object unless Dr. Davy knows.
"MR. STANSELL: Well, he's an expert.
 "MR. PATTON: I'm going to have to object unless he has personal knowledge of what they did.
 "MR. STANSELL CONTINUES: Do you have personal knowledge about how they conduct exams at Bryce's?
 "A. I will have to say I have never been to Bryce Hospital."
* * * * * *
"RE-DIRECT EXAMINATION
"BY MR. STANSELL:
 "Q. Dr. Davy, I've got one more question and then I'm going to be through, I promise you. If it were known to you that any of these doctors that were on this Lunacy Commission report that has been referred to, do you know whether or not they had any experience in Post Viet Nam Stress Syndrome?
"A. No, I don't."
In his closing argument to the jury, the District Attorney commented on the findings of the Lunacy Commission:
 "I want you to think about what we have done to assure that he got a fair trial. *Page 684 
First of all, after the preliminary hearing the evidence is that he was sent to Bryce's to determine whether or not he was sane, whether or not he could stand trial, and they found he was after some three months. And again, and again another request by his attorneys that he be sent to Dr. Glaister —
 "MR. STANSELL: If it please the Court, I'm going to object to that, that's not evidence in this case.
 "BY THE COURT: Ladies and gentlemen of the jury, you are to consider only the evidence that comes from the witness stand. The attorneys can argue any reasonable inferences from the evidence, but what they state to you in their arguments is not evidence in the case.
 "MR. PATTON CONTINUES: If you remember differently — but as I recall, and I think you will recall that I asked Dr. Davy on cross examination if he was not aware of those facts, and he said he was. And he was sent to Dr. Glaister and Dr. Glaister said there wasn't anything wrong with him and sent him back. And then we had a trial which lasted for some period of time, and the jury found him guilty and he was sentenced and it was reversed, and here we are back again."
"The practice of assuming in questions facts not proven is, not only improper and unfair, but, when the assumption of such facts is derogatory to the witness or to the defendant, they must result in a reversal of the case." Cox v. State,25 Ala. App. 38, 41-42, 140 So. 617, 619 (1932), and cases cited therein. "Questions assuming the truth of facts unproved by evidence are properly excluded." Brooks v. State, 32 Ala. App. 389,397, 27 So.2d 48, 55, cert. denied, 248 Ala. 239,27 So.2d 55 (1946); Williams v. State, 245 Ala. 32, 34, 15 So.2d 572,573 (1943); Reed v. State, 18 Ala. App. 181, 90 So. 37 (1921);Wilbanks v. State, 42 Ala. App. 39, 41, 151 So.2d 741, 743
(1962), cert. denied, 275 Ala. 701, 151 So.2d 744 (1963). Questions assuming facts not in evidence are objectionable.Southern Electric Generating Company v. Leibacher, 269 Ala. 9,16, 110 So.2d 308, 314 (1959); Cherry v. Hill, 283 Ala. 74, 76,214 So.2d 427, 429 (1968); Brannan v. Henry, 142 Ala. 698, 704,39 So. 92, 94 (1905). It is improper for a question on cross examination to assume a fact in controversy. Sovereign Camp,W.O.W. v. Adams, 204 Ala. 667, 673, 86 So. 737, 743 (1920);Alford v. State, 26 Ala. App. 188, 189, 155 So. 388, 389 (1934);Byrd v. State, 51 Ala. App. 234, 237, 283 So.2d 683, 685 (1973). This rule is "plain and simple." Campbell v. State, 32 Ala. App. 461,465, 27 So.2d 220, 223 (1946).
An excellent statement of this rule is found in C. Gamble,McElroy's Alabama Evidence, § 121.06 (3d ed. 1977): "As a general rule, a question to a witness which assumes the existence of a material fact, to which he has not testified, is improper. . . . This rule against suggestive questions is applicable on both direct and cross-examination. It has been stated that the reason for prohibiting such questions is to avoid misleading the jury and the witness." To this general rule, there are exceptions:
 "It must be recognized that there are instances when the trial court is justified in permitting a question which assumes facts contrary to the above-described rule. If the existence of the assumed fact is expressly admitted by the objecting party, for example, or is in accord with his theory of the facts, the trial court may properly overrule an objection to the suggestive question. Another basis for allowing such a question is because the whole of the legal evidence in the case shows without dispute the existence of the assumed fact. Additionally, if the assumed fact is a mere incident of the main fact inquired about in the question, and is incapable of misleading either the witness or the jury to the prejudice of the objecting party, the trial court's allowance of the question is, at most, harmless error." McElroy, at § 121.06.
None of these exceptions is applicable to the case under review. The existence of the assumed facts, the finding of sanity by the lunacy commission and by Dr. Glaister, *Page 685 
was not expressly admitted by the defense and was diametrically opposed to the defense's theory of the facts. The existence of the assumed facts was not a mere incident of the main facts in issue. The major factual issue at trial was Crosslin's mental capacity to commit the offense. The only "evidence" showing the existence of the assumed facts is found in the prosecutor's questions.
The record before this Court does not offer a finding of harmless error. Boyett v. State, 42 Ala. App. 220, 225,159 So.2d 628, 632-33 (1964) ("The trial judge by (1) having the jury withdraw, (2) sustaining defense counsel's objection to the question, (3) warning the deputy solicitor, (4) caucusing the jurymen, and (5) directing them to disregard any implication of fact from the unanswered question — in combination — made the question harmless."). There was no other evidence showing that Crosslin had been determined to be sane by psychologists and psychiatrists.
Although the State called Dr. Loren Gary as a rebuttal witness, his testimony was not cumulative of the facts assumed by the prosecutor. Dr. Gary was a medical doctor for the Colbert County Jail. He was not a psychologist or psychiatrist. He administered medication to Crosslin and treated him for injuries Crosslin received while in the county jail. Dr. Gary saw Crosslin before and after Crosslin's first trial in his capacity as the doctor for the county jail and testified that in his opinion Crosslin was not suffering from a mental defect or illness at that time. Dr. Gary could not estimate the time he spent with Crosslin but considered it enough to form an opinion. He performed no psychiatric tests or evaluations upon Crosslin.
"The harmless error rule is to be applied with extreme caution in capital cases." Ex parte Whisenhant, 482 So.2d 1247
(Ala. 1984). The comments of our Supreme Court in that case are instructive:
 "To convert the error in this case to harmless error, the State must show beyond a reasonable doubt that the outcome would have been the same notwithstanding the failure to prove the crimes referred to by the Attorney General. Whisenhant v. State, [Ms. July 8, 1983] [482] So.2d [1241] (Ala. 1983); Washington v. Strickland, 693 F.2d 1243 (5th Cir. 1982). This it has not done.
 "The Attorney General apparently believed that the knowledge of additional crimes would have some impact on the jury, or he would not have referred to them. We cannot say that it did not." (Emphasis in original.)
We recognize that the State has a right to cross examine an expert witness testifying on the sanity of the defendant about the reports of other experts he used in examining and diagnosing the defendant where the witness referred to thoseother reports on direct examination. Dean v. State, 54 Ala. App. 270,277, 307 So.2d 77, 83 (1975); Braswell v. State,371 So.2d 992, 997 (Ala.Cr.App. 1979). Here, Dr. Davy did not mention any report or finding of any other expert on direct examination. Consequently, the District Attorney's questions were not proper in explanation or rebuttal of statements made by Dr. Davy on direct examination. Bradley v. Jones, 282 Ala. 331, 335,211 So.2d 465, 468 (1968).
The Attorney General argues that "the defense opened the door for questioning the expert about the existence of the lunacy commission report through the testimony by the defense expert on direct examination that defendant had not received `any kind of mental health help,' — when in fact the expert was aware the defendant had been examined by the lunacy commission." Appellee's brief, p. 52. This argument is a sophism, a plausible but fallacious argument. Dr. Davy's testimony was that "to his knowledge" Crosslin had not received any mental health help "with the symptoms he [Dr. Davy] had described." Indeed, a finding by the lunacy commission that Crosslin "was not suffering from any disorder either then or at the time of the crime" shows that Crosslin did not require "mental health help" and consequently does not rebut Dr. Davy's assertion that Crosslin had received no mental health help *Page 686 
with the symptoms he had described. More significantly, it is one thing to cross examine Dr. Davy about his knowledge ofwhether or not Crosslin had been examined by other experts. It is quite another to ask Dr. Davy if he knew that Crosslin had been examined and found sane by those other experts.
As in Campbell:
 "Here the manner of cross-examination was highly prejudicial, and was calculated to seriously, erroneously and injuriously affect the substantial rights of the defendant. Its tendency was to defeat the fair and impartial trial, free from prejudice accorded to defendant under the Constitution and law of this state." 32 Ala. App. at 465, 27 So.2d at 223.
For the reasons set forth in this opinion, the judgment of the circuit court must be reversed and the cause remanded for further proceedings. Because of this finding, we decline to address the remaining issues raised on appeal. However, this declination is not to be considered as a finding of no merit to those issues we have not addressed.
REVERSED AND REMANDED.
All Judges concur.