THE PEOPLE OF THE STATE OF ILLINOIS, Plaintiff-Appellee, *v.* ROBERT SPROUSE, Defendant-Appellant.

First District (1st Division)    No. 79-2302

Opinion filed March 23, 1981.

666

Ralph Ruebner and Bradley A. Bridge, both of State Appellate Defender's Office, of Chicago, for appellant.

Richard M. Daley, State's Attorney, of Chicago (Marcia B. Orr, Adrienne Nobel Nacev, and Gael McCaughey-O'Brien, Assistant State's Attorneys, of counsel), for the People.

Mr. JUSTICE O'CONNOR delivered the opinion of the court:

After a bench trial, defendant Robert Sprouse was convicted of attempt rape and indecent liberties with a child (lewd fondling) and was sentenced to a term of 12 years' imprisonment. Defendant appeals, contending that (1) he was not proven guilty beyond a reasonable doubt because complainant's testimony was incredible, was not clear and convincing and was not sufficiently corroborated; (2) he did not receive adequate representation by counsel; (3) he was denied his right to a fair trial when the trial court committed certain alleged errors; and (4) pursuant to section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)), the trial court abused its discretion by denying him probation.

The complainant testified that on June 24, 1979, because complainant's mother was at that time hospitalized, she was staying with Anna Santana, in Calumet City, Illinois. She spent the night of June 24, 1979, with Santana's neighbor, Deborah Dial. Dial's uncle, defendant Robert Sprouse, was also staying at Dial's home. On the night of June 24, 1979, complainant slept fully clothed on the floor in Dial's mother's room. Dial also slept in that room. Complainant woke up on June 25, 1979, at about 9 a.m. Dial was still sleeping. Complainant went into the front room, sat on a couch and watched television. No one else was home. Defendant came into the house at about 9:15 a.m., carrying a bag containing whiskey and beer. Defendant sat in a chair in the front room and told complainant to put the whiskey and beer away. Complainant put them both in the refrigerator and returned to the couch in the front room. Defendant came over to complainant, sat next to her on the couch and then grabbed her

feet and put her on his lap. Defendant next carried complainant into a second bedroom, put her on the bed and sat beside her. Complainant testified that during this time she was screaming and hollering. Defendant responded, "Shut up or else I'll kill you."

Defendant told her to unbutton her jeans. When she did not do so, defendant unbuttoned them. Defendant then put his hand inside her underwear and attempted to insert his finger into her vagina. Complainant heard someone come into the house and she started hollering. Defendant looked into the living room and kicked the bedroom door shut with his foot.

Defendant then told complainant to take off her pants. When she did not do so, defendant pulled her jeans and underwear down to her feet. Complainant testified that she was screaming and hollering during the time defendant was pulling off her pants. She stopped after defendant told her to "Shut up." Defendant then unzipped his own pants and got on top of complainant, who was on her back. Defendant stuck his penis near complainant's vagina and was "humping" for 10 to 20 minutes. Defendant then rolled over. Complainant jumped up, pulled her pants on, zipped them up and ran out the door. She ran into the kitchen for a drink of water because she was "hot and sweaty." Complainant then ran through the dining room into the front room, where Candice Shipley was sitting on the couch. Complainant was crying. Shipley asked complainant what happened and complainant pointed to the bedroom where defendant was. Complainant then ran out of the house and went to Anna Santana's house. Complainant ran to Santana and hugged her. The police arrived at Santana's home and complainant was taken to St. Margaret's Hospital, where she was examined.

During cross-examination, complainant stated she was 11 years old at the time this incident occurred and weighed 80 pounds. Defendant had been living in Dial's house for about a week or so prior to the incident. Complainant had slept at Dial's house on several previous occasions. Defendant had been there on two or three of these occasions. Complainant and defendant had "horseplayed" more than twice. Defendant had pinched her cheek. These incidents of "horseplay" had occurred when Dial and some of her friends were present. The door to Dial's bedroom remained open after complainant left the room to watch television.

Complainant stated that she did not know what the term "masturbation" meant. Complainant stated that she did know what "playing with oneself" meant. Complainant stated she had not "played with herself" on the morning of the incident. She also stated that she had not engaged in sporting activities, ridden a bike or had any accidents on the morning of the incident. She had not injured herself on the end of the couch.

Defendant had slept that night on the couch in the front room.

Complainant did not know when he went to sleep. He was gone when she got up in the morning.

Anna Santana testified that she was taking care of complainant on June 24, 1979, because complainant's mother was in the hospital. Complainant spent the night of June 24, 1979, at Dial's home after receiving Santana's permission to do so. At approximately 11:30 a.m. on June 25, 1979, complainant ran into Santana's home crying and hugged Santana. Complainant was hysterical. Complainant stated to Santana, "Bobby raped me." Candice Shipley then telephoned Santana from the Dial home. Shipley was concerned about complainant because complainant had run out of the bedroom and out of the Dial house crying. After speaking with Shipley, Santana continued her attempts to calm complainant. Santana then telephoned Dial and asked if defendant was there. Santana said to Dial, "What's going on? [Complainant] just said that Bobby raped her." Following this conversation, Santana called the police. Complainant was still crying. Santana and a detective took complainant to St. Margaret's Hospital.

During cross-examination, Santana stated she lived next door to Dial and that their houses were about 20 feet apart. Complainant was bruised on her arms and neck. Complainant told Santana that defendant had come in "drunk" while she was watching cartoons. Santana stated that prior to the incident complainant had not complained that she had hurt her vaginal area. Santana stated that complainant did not engage in sports.

Deborah Dial testified that complainant spent the night of June 24, 1979, at Dial's house. She stated that defendant was her uncle. At approximately 11:30 a.m. on June 25, 1979, Shipley woke Dial. Shipley appeared to be "shaken up" and was "stuttering," "get up, get up." Dial got out of bed and saw defendant lying on the bed in the other bedroom, which was unusual because defendant was never in that bedroom. Defendant's pants were undone. Dial told defendant to leave. He refused. Dial telephoned Santana and later received a call from Santana. The police eventually arrived at the Dial home and arrested defendant. When the police arrived, an officer instructed defendant to zip up his pants.

The bedroom Dial slept in that night was about 30 feet from the bedroom that defendant was in that morning. Dial's bedroom door was open while she slept.

Dr. Jagdish Muzumdar testified that he examined complainant at approximately 12:30 p.m. on June 25, 1979, at St. Margaret's Hospital. The doctor noted that complainant had a bruise on her left vulva. It was Dr. Muzumdar's opinion that it was possible that that bruise was caused by the thrusting of an erect male penis on the outer lip of her vagina or by a man's finger manipulating her vaginal area. The doctor characterized complainant's case as a sexual assault. The doctor testified that complain-

ant told him she had three similar sexual assaults in the last one year. Complainant had told the doctor that on one occasion somebody had tried to put a hand down her pants and another time someone had tried to show her his penis. With regard to these previous assaults, Dr. Muzumdar testified that complainant really did not understand what she was talking about. However, the doctor testified that complainant was "emotionally very stable." Dr. Muzumdar stated that complainant was given a penicillin injection and probencie to prevent any likelihood of a gonorrhea infection.

On recross examination, defendant's attorney asked, "Doctor, when you were asked a hypothetical question by the State's Attorney and you said this bruise could possibly been caused by an erect male penis, it could be caused by something else, couldn't it?" The prosecutor's objection that the question was beyond the scope of redirect examination was sustained. Defense counsel did not make an offer of proof or explain why this question was an important one.

Defendant Robert Sprouse testified that he had a few beers on the night of June 24, 1979, going into the morning of June 25, 1979. When he woke up on June 25, 1979, complainant was asleep on Dial's bedroom floor. He walked to Dempsey's tavern and had a beer. He bought a six-pack of beer and a half pint of liquor and returned to Dial's home. Complainant was asleep in the front room with her legs up. Defendant got a beer and sat drinking it on the couch. He then went to the bathroom and after getting another beer went into the bedroom and lay down. At this time complainant was still asleep. Defendant turned his back to the bedroom door and complainant came into the room. Complainant reached into his shirt pocket, as she had done before, to try to get a cigarette. "Just to fool with her," defendant pulled complainant across the bed while she was "kicking and stuff." Complainant said, "Bobby, let me up" and she left the room. Defendant lay down and slept until Dial woke him screaming, "Get out of bed, Bobby. [Complainant] said you raped her." Defendant got another beer and sat down on the couch trying to calm Dial.

Defendant described the "horseplay" he had engaged in with complainant. She would try to grab cigarettes out of his shirt pocket. Defendant stated that "the way [he] looked at it [he] didn't" attempt to have sexual intercourse with complainant and he did not attempt to fondle her. When asked if he attempted "to play with her vaginal area," defendant responded, "[I]f it was tipped, it was accidentally" because she had her clothes on. Defendant stated that he did not ask her to take off her clothes and denied that he ever stated he would hit her. Complainant never screamed, but had laughed when they were in the bed.

During cross-examination, defendant stated he did not touch complainant's vaginal area. He touched her arm when she reached across him and he responded by pulling her on top of him. Complainant became angry when Sprouse was holding her. He let her up the very second she asked him to. Defendant stated it was at least midnight when he went to sleep on the couch. The state's attorney asked defendant if he remembered telling the police that it was 4 a.m. when he went to sleep on the couch and defendant responded that he did not remember telling the police that. The state's attorney then asked defendant if he remembered first telling the police that complainant came by him when he was on the couch and later changed his story to say she came by him when he was in the bedroom. Defendant responded that he never did tell the police that complainant came by him while he was in the living room.

Defendant stated that complainant was mad when she left the bedroom. Defendant stated that when he was in the bedroom he was able to see Shipley on the couch in the front room through the open door. He also stated that when complainant was in the bedroom with him, the door was not closed. Defendant stated that his pants were unbuttoned and unzipped when Dial woke him.

The court found defendant guilty of attempt rape and indecent liberties with a child. At the hearing in aggravation and mitigation, the state's attorney reviewed the facts constituting the offenses for which defendant was convicted. The state's attorney urged the court to consider defendant's history of criminal conduct, which included convictions for breaking and entering, theft, transportation of stolen property and certain misdemeanors. The state's attorney noted that defendant was eligible for probation, but recommended a term of 12 years' imprisonment.

The defense attorney argued in mitigation that defendant had no past history of the type of conduct which now served as the basis for the indecent liberties with a child (lewd fondling) or attempt rape convictions and requested that defendant be granted probation.

Defendant stated that he was not guilty of any sexual offenses against complainant.

The court found that defendant was not probational due to his past record, his geographic proximity to complainant, the seriousness of the crime and because of the need to protect minor children.

Defendant first contends he was not proved guilty either of attempt rape or indecent liberties with a child (lewd fondling) beyond a reasonable doubt because complainant's testimony was neither clear and convincing nor was it sufficiently corroborated. Defendant argues that complainant's testimony was not clear and convincing because (1) her testimony that she screamed during the attack was inconsistent with testimony of other witnesses; (2) her testimony concerning past sexual assaults indicated she

was living in a world of dreams; and (3) in her account of the incident a gap of time of one hour and 15 minutes is unexplained. Defendant also argues that complainant's testimony was not corroborated.

■■ Attempt rape includes every element of the crime of rape except penetration. (*People v. Hanley* (1977), 50 Ill. App. 3d 651, 365 N.E.2d 676; *People v. Moore* (1966), 77 Ill. App. 2d 62, 222 N.E.2d 142.) In Illinois, in order to sustain a conviction of rape or of indecent liberties with a child the testimony of the complaining witness must be clear and convincing or corroborated by some other facts or evidence. (*People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063 (indecent liberties with a child conviction); *People v. Gasner* (1979), 79 Ill. App. 3d 964, 398 N.E.2d 1122 (indecent liberties with a child conviction); *People v. Robinson* (1978), 67 Ill. App. 3d 539, 384 N.E.2d 962 (rape conviction); *People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052 (rape conviction).) In a bench trial, the question of the credibility of the witnesses and the weight to be given their testimony is for the determination of the trial court and its finding will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. *People v. Novotny* (1968), 41 Ill. 2d 401, 244 N.E.2d 182; *People v. Hanley.*

Defendant argues that the testimony of complainant in the instant case that she screamed during the attack was not credible because it was inconsistent with (a) the testimony of Dial, who stated she was sleeping in the next bedroom with her door open, (b) the testimony of Santana, who stated she lived next door to Dial and their homes were 20 feet apart, and (c) the fact that Shipley came into the Dial home during the alleged incident. Defendant's argument, therefore, is that complainant's testimony that she screamed during the attack is incredible because if complainant had screamed, Santana, Dial and Shipley each would have heard her and in some way reacted to her cries. We find defendant's argument lacks merit. Shipley was not called as a witness and neither Santana nor Dial testified that she did not hear screams.

■■ Even if complainant did not cry out, we do not find that fact to create a reasonable doubt of defendant's guilt. "Those facts which will, or will not, establish these elements [of the offense charged] beyond a reasonable doubt will vary as might ages, or places or times. For example, the failure of an alleged rape victim to scream or cry out may be of pivotal importance in one case and quite insignificant in another. * * * It is the totality of facts and circumstances which must be carefully examined in each case." *People v. Pointer* (1972), 6 Ill. App. 3d 113, 118, 285 N.E.2d 171.

■■ Defendant argues that the testimony of complainant was incredible because testimony she gave concerning past sexual assaults indicated she

was living in a world of dreams. We do not agree. Unlike the circumstances in *People v. Morgan* (1977), 69 Ill. 2d 200, 370 N.E.2d 1063, there was no showing that complainant had a propensity to fabricate stories. Additionally, there was no evidence here that complainant had not experienced those encounters.

■■ Defendant's final argument in support of his assertion that complainant's testimony was not clear and convincing is that in complainant's account of the incident a gap of time of one hour and 15 minutes is unexplained. Defendant argues that the incident would probably have taken no more than one hour and, according to complainant's recollection of the events, the incident occurred over a period of two hours and 15 minutes. We are not persuaded by defendant's argument. Even assuming the incident would have taken no more than one hour, complainant's recollection that the events occurred over a period of two hours and 15 minutes would constitute a discrepancy going only to her credibility. The trier of fact must weigh any discrepancies in light of all the other testimony in reaching its decision. (*People v. Wright* (1972), 3 Ill. App. 3d 829, 279 N.E.2d 398.) We find that this alleged discrepancy did not distract from the reasonableness of complainant's story as a whole. (See *People v. Brown* (1963), 29 Ill. 2d 375, 194 N.E.2d 326; *People v. Thomas* (1960), 18 Ill. 2d 439, 164 N.E.2d 36; *People v. Wright*.) Complainant's testimony was very straightforward, and we find it to be clear and convincing.

■■ Even assuming complainant's testimony was not clear and convincing, her testimony was sufficiently corroborated by (a) her prompt complaint made to Mrs. Santana that she had been attacked (*People v. Secret* (1978), 72 Ill. 2d 371, 381 N.E.2d 285; *People v. Thompson* (1978), 57 Ill. App. 3d 134, 372 N.E.2d 1052), (b) medical evidence indicating a physical assault (*People v. Rankin* (1979), 73 Ill. App. 3d 661, 392 N.E.2d 288; *People v. Thompson*), and (c) her emotional distress evidenced by crying (*People v. Rankin; People v. Thompson*). We find that defendant was proved guilty beyond a reasonable doubt of both attempt rape and indecent liberties with a child (lewd fondling).

Defendant's second contention is that he did not receive adequate representation by his privately retained counsel because his trial counsel (a) did not question Dr. Muzumdar about other causes for complainant's injuries, (b) did not object to or move to strike Dr. Muzumdar's testimony concerning the causes of the injuries even though the testimony was not probative, (c) did not object to the prosecutor's failure to prove its insinuations that defendant had made prior inconsistent statements, and (d) did not make an offer of proof when the court sustained an objection to his proper questioning of complainant.

■■ A conviction will not be reversed because of incompetency of

privately retained counsel unless the representation is of such a low caliber as to amount to no representation at all or reduces the court proceedings to a farce or sham. (*People v. Murphy* (1978), 72 Ill. 2d 421, 381 N.E.2d 677.) However, a review of competency of counsel does not extend to areas involving the exercise of judgment, discretion or trial strategy. (*People v. Newell* (1971), 48 Ill. 2d 382, 268 N.E.2d 17; *People v. Faulkner* (1980), 86 Ill. App. 3d 136, 407 N.E.2d 126.) Furthermore, mistakes in strategy will not render the representation incompetent. (*People v. Torres* (1973), 54 Ill. 2d 384, 297 N.E.2d 142; *People v. Robinson* (1979), 70 Ill. App. 3d 24, 387 N.E.2d 1114.) "A defendant is entitled to competent, not perfect or successful representation." (*People v. Murphy* (1978), 72 Ill. 2d 421, 438.) It is presumed that counsel was competent, and this presumption can be overcome only by strong and convincing proof of incompetency. *People v. Bach* (1979), 74 Ill. App. 3d 893, 393 N.E.2d 563.

We are also mindful that the competency of counsel depends upon the particular facts and circumstances of each case which are viewed in their totality from a review of the entire record, rather than from a narrow focus upon isolated instances occurring during the course of the trial. *People v. Carter* (1980), 85 Ill. App. 3d 818, 407 N.E.2d 584; *People v. Clark* (1977), 47 Ill. App. 3d 624, 365 N.E.2d 20.

■■ Defendant first cites the instance that his trial counsel did not question Dr. Muzumdar about other causes for complainant's injuries to support his argument that his trial counsel was incompetent. We find that because this instance involves the exercise of judgment, discretion or trial strategy, a review of competency of counsel does not extend to cover this instance. (*People v. Newell.*) Furthermore, defendant's trial counsel did attempt to elicit other causes for complainant's bruises from witnesses other than Dr. Muzumdar. On cross-examination of complainant, defendant's trial counsel asked complainant if she had masturbated on the morning of the incident, ridden a bicycle, engaged in any sporting activities or fallen down that morning. Complainant responded that none of these events had occurred. Defendant's trial counsel also asked Mrs. Santana if complainant had engaged in any sports prior to the incident and she responded in the negative.

■■ The second instance defendant cites as constituting incompetence of counsel is that defendant's trial counsel did not object to or move to strike Dr. Muzumdar's testimony concerning the causes of the injuries even though the testimony was not probative. Even if the testimony was inadmissible, and defendant's trial counsel was in error in failing to make an objection, we note that "[t]he mere failure to make an objection is a matter of judgment and does not establish incompetency." (*People v. Hills* (1979), 71 Ill. App. 3d 461, 467, 389 N.E.2d 873, *aff'd and remanded*

(1980), 78 Ill. 2d 500, 401 N.E.2d 523.) Furthermore, we find the doctor's testimony was probative as to the cause of complainant's injury. Dr. Muzumdar's opinion was based solely on the witness' physical examination of complainant. Dr. Muzumdar did not refer to the circumstances under which the incident took place or to the other elements essential to the crime charged. Because the testimony was properly admitted (see *People v. Freedman* (1954), 4 Ill. 2d 414, 123 N.E.2d 317), defendant's trial counsel's failure to object to or move to strike the testimony in no way supports defendant's assrtion that his trial counsel was incompetent.

Defendant next argues that his trial counsel's failure to object to the prosecutor's failure to prove its insinuations that defendant made prior inconsistent statements demonstrates incompetence of counsel. The prosecutor questioned defendant as follows:

"Q. What time did you go to sleep on the couch?
A. I really don't know. It was late, I'd say at least midnight.
Q. Well, do you remember telling the police it was four o'clock?
A. In the evening?
Q. In the morning?
A. No, sir.
* * *

Q. Do you remember telling the police that [complainant] came by you when you were on the couch? Do you remember telling Investigator Balaszek that?
A. No.
Q. At the Calumet Police Station?
A. I sure don't remember telling you.
Q. Do you remember telling them she first came by you when you were on the couch and then you changed your story and say she came by you when you were in the bedroom?
A. I never did tell him when she came by me while I was in the living room."

■■ Where the State, in laying a foundation for impeachment, insinuates the existence of prior inconsistent statements by the witness and the witness denies making the statement, the State must produce evidence that the prior inconsistent statement was made. (*People v. Morris* (1979), 79 Ill. App. 3d 318, 398 N.E.2d 38.) The State did not produce evidence that the prior inconsistent statement was made. We agree that defendant's trial counsel should have objected to the prosecutor's failure to prove its insinuations that defendant made prior inconsistent statements. However, "competency of counsel depends upon the particular facts and circumstances of each case which are viewed in their totality from a review of the entire record rather than from a narrow focus upon isolated instances occurring during the course of the trial." (*People v. Carter* (1980), 85 Ill.

App. 3d 818, 825, 407 N.E.2d 584.) We cannot say that this error by defendant's trial counsel determines that defendant was denied adequate assistance of counsel. We also note that the prior inconsistent statements in this case involved minor issues. Cf. *People v. Morris* (where the alleged prior inconsistent statement was the confession of defendant).

■■ Defendant's final argument that his trial counsel was incompetent is based on his assertion that his counsel failed to make an offer of proof when the trial court sustained an objection to his question, asked of complainant, as to whether or not she masturbated within the two-week period prior to the incident of which she complains. The following colloquy occurred:

"Q. In the two week period that Mr. Sprouse was at the home had you ever played with yourself?

ASSISTANT STATE's ATTORNEY: Objection.

THE COURT: Sustained. You mean on some other occasion?

DEFENSE COUNSEL: Yes, Judge.

THE COURT: Sustained.

DEFENSE COUNSEL: All right. Let's be more specific then. Q. The morning that this incident happened, did you play with yourself?

A. No, Sir."

We do not find that defendant's trial counsel's failure to make an offer of proof that complainant had masturbated within the two-week period during which defendant was staying at the Dial home amounted to incompetence of counsel.

Focusing on defendant's privately retained counsel's overall representation of defendant during his trial, we find that it was not of such a low caliber as to amount to no representation at all or reduce the court proceedings to a farce or sham. Defendant was not denied effective assistance of counsel.

Defendant's third argument is that he was denied his right to a fair trial because (1) the trial court precluded a full and adequate cross-examination of the State's witnesses, (2) the prosecutor failed to prove insinuations that defendant made prior inconsistent statements, and (3) the trial court relied on its conclusion that defendant's memory about the events was impaired because of a drinking problem when such evidence was not presented at trial nor was it a fair inference based on the evidence that was introduced.

■■ The State argues that defendant has waived these issues by failing to include them in his motion for a new trial. In a bench trial, the filing of a post-trial motion is not necessary to preserve the error, but that does not remove the requirement that the alleged error must, somehow, have been

brought to the attention of the trial court. (*People v. Lain* (1980), 80 Ill. App. 3d 1136, 400 N.E.2d 1033; *People v. Guynn* (1975), 33 Ill. App. 3d 736, 338 N.E.2d 239.) We have examined the relevant portions of the transcript of proceedings and defendant's written post-trial motion. Because the alleged errors were not brought to the attention of the court below and because we do not find this case to be one appropriate for the application of the plain error doctrine (Ill. Rev. Stat. 1979, ch. 110A, par. 615(a)), we conclude that a waiver of these alleged errors occurred.

Defendant's final contention is that the trial court abused its discretion by not granting defendant's request for probation. Defendant argues that the trial court based its decision on reasons other than those set forth in section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)) and did not make the necessary findings to reject probation.

Section 5—6—1(a) of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1(a)) provides as follows:

"(a) Except where specifically prohibited by other provisions of this Code, the court shall impose a sentence of probation or conditional discharge upon an offender unless, having regard to the nature and circumstance of the offense, and to the history, character and condition of the offender, the court is of the opinion that:

(1) his imprisonment * * * is necessary for the protection of the public; or

(2) probtion or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice."

A defendant convicted of attempt rape or indecent liberties with a child is eligible for probation. (Ill. Rev. Stat. 1979, ch. 38, par. 1005—5—3(b)(1).) However, a defendant has neither an inherent nor a statutory right to probation, but the granting or not granting of the same rests in the discretion of the court. *People v. Hart* (1973), 10 Ill. App. 3d 857, 295 N.E.2d 63; *People v. Polansky* (1972), 6 Ill. App. 3d 773, 287 N.E.2d 747.

Our supreme court recently stated in *People v. Cox* (1980), 82 Ill. 2d 268, 281, 412 N.E.2d 541:

"* * * [W]henever a sentence of imprisonment or periodic imprisonment is imposed, the record must indicate that the judge is of the opinion that imprisonment is necessary for the protection of the public or that probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice. Substantial compliance with section 5—6—1 may exist even if the judge does not specifically say that 'imprisonment is necessary for the protection of the public'

or that 'probation or conditional discharge would deprecate the seriousness of the offender's conduct and would be inconsistent with the ends of justice.' If the record demonstrates substantial compliance with this requirement, then a reviewing court may alter the sentencing judge's disposition only upon a finding of an abuse of discretion. *People v. Perruquet* (1977), 68 Ill. 2d 149, 153."

■■ We find the record in this case indicates that the sentencing judge was of the opinion that imprisonment was necessary for the protection of the public and that substantial compliance with section 5—6—1 of the Unified Code of Corrections (Ill. Rev. Stat. 1979, ch. 38, par. 1005—6—1) exists. The court found that defendant was not probational due to (1) his past record, (2) his geographic proximity to complainant, (3) the seriousness of the crime, and (4) because of the need to protect minor children. We do not find the sentencing judge abused his discretion in denying defendant's request for probation.

The convictions and sentence of the circuit court of Cook County are affirmed.

Affirmed.

GOLDBERG, P. J., and McGLOON, J., concur.