135 Ill. App.3d 145 (1985)
481 N.E.2d 883
In re C.K.M., a Minor (The People of the State of Illinois, Petitioner-Appellee,
v.
C.K.M., Respondent-Appellant).
No. 5-83-0675.
Illinois Appellate Court  Fifth District.
Opinion filed July 17, 1985.
*146 Randy E. Blue and John R. Abell, both of State Appellate Defender's Office, of Mt. Vernon, for appellant.
John Baricevic, State's Attorney, of Belleville (Stephen E. Norris, of State's Attorneys Appellate Service Commission, of counsel), for the People.
Judgment affirmed.
JUSTICE HARRISON delivered the opinion of the court:
Respondent, C.K.M., a 14-year-old male, was adjudicated delinquent after a juvenile court hearing based upon the offense of attempted rape upon a six-year-old girl. The trial court denied the respondent's motion in arrest of judgment and sentenced the respondent to two years' probation. Respondent appeals, contending (1) that the trial court exceeded the scope of section 115-10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115-10) by allowing hearsay testimony into evidence pertaining to the alleged act and corroborative complaints which was not spontaneous or timely, and (2) that the State failed to prove the essential element of force beyond a reasonable doubt.
The minor victim, K.D., testified that approximately two weeks prior to the adjudicatory hearing the respondent tried to put his penis in her vagina. This incident occurred during an afternoon nap period for the children being cared for at the respondent's residence by the respondent's mother. K.D. stated that respondent woke her up from her nap and told her to take off her panties. He then pulled out his penis, put a white substance on it, got on top of her, and attempted to insert his penis into her vagina. K.D.'s testimony was that the respondent "put his tail in my pee pee hole * * * Big Chris put some Clorox [sic] on his tail, and then he put it in my pee pee hole." K.D. said that she asked the respondent to stop because he was hurting her. The respondent replied, "It won't hurt you when you go to the bathroom," and continued in his attempt to penetrate her vagina. After *147 the respondent finished, he told K.D. not to tell anyone and gave her a toy motorcycle and a piece of candy after she promised not to tell.
Dr. George Pratt, a medical doctor with the United States Air Force, testified that he examined six-year-old K.D. on July 27, 1983, at 5:45 p.m. for indications of sexual abuse. In examining the minor, Dr. Pratt took a history. Dr. Pratt testified:
"I asked the little girl what had happened. She said that she only wanted to describe this once, and so my assistant didn't go into the details on it. She called me, and the little girl said, and I quote, `Big Chris put some grease on his tail and put it against my pee pee, and it hurt when I went to the bathroom * * *.' She said he hurt when he put his tail on her, and he did this five times."
An examination of K.D.'s vaginal area revealed small amounts of blood. Although this blood was not copiously present, it did indicate that K.D.'s vagina had recently undergone some sort of trauma. Dr. Pratt was unable to determine whether or not this trauma was the result of sexual molestation. Dr. Pratt also noted that he observed a blood spot on her underwear about the size of a nickel. He testified that it was uncommon for a six-year-old girl to have traces of blood or a small drop of blood in her vaginal orifice. The doctor also indicated that his examination of the minor was difficult because she was afraid they were going to hurt her and she actively resisted the examination.
K.D.'s mother testified that on July 27, 1983, at approximately 5 p.m., K.D. walked into the house and went to the bathroom. While in the bathroom K.D. began to cry. In response to her question as to why she was crying, K.D. stated, "Well, Chris hurt me * * * that he had put some stuff on his tail and tried to put it in her pee pee." On examining K.D.'s vaginal area, she noticed that the skin around K.D.'s vagina was sore and a little greasy and there was blood on her panties.
Fairview Heights police detective James Stover testified that on July 28, 1983, at approximately 8:30 a.m., he received a telephone call from the Scott Air Force Base Hospital Emergency Room informing him that a juvenile had been brought in and treated for possible sexual molestation. After obtaining the victim's address, he went to K.D.'s house and asked K.D. several questions about the alleged incident. Detective Stover repeated the complaint made by the minor but went into more details of the attempted rape as related to him as a result of these questions. The State rested its case-in-chief after Detective Stover's testimony.
*148 The defense called respondent's mother, respondent's father, and the respondent as witnesses. Respondent's mother testified that on July 27, 1983, the respondent was watching a movie. While the respondent was watching the movie, K.D. was crawling over the respondent and straddling his leg, riding it like a horse. Respondent's mother never heard K.D. say stop nor did she hear K.D. complain of pain while K.D. was at her residence. Respondent, C.K.M., testified that on July 27, 1983, K.D. was jumping onto his lap vigorously while he was watching a movie. Later, during the afternoon nap, he laid down on the floor by a cool air vent near the couch where K.D. was lying. While he was on the floor, he "itched" his crotch area and his penis became visible. K.D. saw his penis and touched it. K.D. then pulled off her pants and underwear and he laid on the couch with her. When he rolled over, his arm was lying on her arm and she yelled. He tried to get away, but as he was doing so, his penis touched K.D.'s vaginal area. He testified that although he had a partial erection while he was on the couch with K.D., he did not intend to put his penis into her vagina.
After respondent's testimony, the defense rested. The State and the defense then called rebuttal witnesses. The court thereafter made an adjudication of delinquency based upon the offense of attempted rape.
 1, 2 Respondent's first contention on appeal is that the trial court exceeded the scope of section 115-10 of the Code of Criminal Procedure of 1963 (Ill. Rev. Stat. 1983, ch. 38, par. 115-10) by allowing into evidence detailed hearsay testimony pertaining to the alleged act and corroborative complaints which was not spontaneous or timely. Section 115-10 of the Code of Criminal Procedure of 1963 provides:
"In a prosecution for a sexual act perpetrated upon a child under the age of 12, including but not limited to prosecutions for violations of Sections 11-1 through 11-5 of the Criminal Code of 1961, the following evidence shall be admitted as an exception to the hearsay rule:
(1) testimony by such child that he or she complained of such act to another; and
(2) testimony by the person to whom the child complained that such complaint was made in order to corroborate the child's testimony." (Ill. Rev. Stat. 1983, ch. 38, par. 115-10.)
Noting that the trial court allowed the examining physician, the victim's mother and the investigating police officer to testify about what K.D. told them about the incident, the respondent contends that the *149 trial court erred by allowing more of this testimony into evidence than the legislature intended. While admitting that the clear intention of the legislature was to allow corroboration of the fact that a child under 12 made a complaint of sexual abuse to another person, respondent contends that it was clearly not the intention of the legislature that this law be used as a springboard for hearsay testimony detailing alleged incidents of child sexual abuse.
Statements by a rape victim have traditionally been admissible where they come within either the spontaneous-declaration or corroborative-statement exceptions to the hearsay rule. (People v. Fuelner (1982), 104 Ill. App.3d 340, 349, 432 N.E.2d 986, 993.) The complaint must be spontaneous and not made as a result of a series of questions to which answers are given. Also, the complaint must be promptly made without inconsistent or unexplained delay. Only the fact of the complaint and not the details may be admitted. (104 Ill. App.3d 340, 350, 432 N.E.2d 986, 994.) Respondent contends that the intended scope of section 115-10 of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 115-10) was greatly exceeded in the instant case when Dr. Pratt, the victim's mother, and Detective Stover were allowed to testify in explicit detail about what K.D. had told them. Furthermore, respondent argues the statements K.D. made to Dr. Pratt, her mother and Detective Stover were not spontaneous because they were made in response to questions and that they were not timely because they were made hours after the alleged incident. Respondent concludes that the sheer volume of this alleged inadmissible hearsay testimony which was allowed into evidence influenced the court and constituted reversible error entitling him to a new adjudicatory hearing.
Section 115-10 of the Code (Ill. Rev. Stat. 1983, ch. 38, par. 115-10) clearly allows the testimony of the person to whom the child complained that such complaint was made in order to corroborate the child's testimony. The minor victim in the instant case complained that respondent "put his tail in my pee pee hole * * * Big Chris put some Clorox [sic] on his tail, and then he put it in my pee pee hole." The victim's mother testified that on the day in question after she picked her daughter up at the babysitter's, the child went into the bathroom and started crying. In response to her question as to why she was crying the child stated, "Well, Chris hurt me * * * that he had put some stuff on his tail and tried to put it in her pee pee." The remainder of the mother's testimony consisted of her own observations of the physical condition of the victim, including that her skin was sore and it was a little greasy and there was blood on her panties. Dr. Pratt's and the mother's testimony consisted of simply repeating the *150 child's words in complaining of the attempted rape. We need not consider whether Dr. Pratt's testimony was admissible under section 115-10, inasmuch as his testimony was admissible under an additional exception to the hearsay rule. As the court in People v. Fuelner (1982), 104 Ill. App.3d 340, 432 N.E.2d 986, recognized:
"Statements of presently existing bodily condition made by a patient to a doctor consulted for treatment are almost universally admitted as evidence of the facts stated. [Citation.] This exception may be taken one step further to encompass statements made to a physician concerning the cause or the external source of the condition to be treated. [Citation.]" 104 Ill. App.3d 340, 351, 432 N.E.2d 986, 995.
 3 Detective Stover's testimony of the details of the attempted rape as reported to him by the minor victim appear to us to go beyond the fact that a complaint was made. We find, however, that the improper admission of this evidence is harmless, as the facts related by Detective Stover were strongly established by other competent evidence. The minor victim testified to substantially everything that Detective Stover corroborated in his testimony.
 4 In Illinois, in order to sustain a conviction of rape, the testimony of the victim must be clear and convincing or corroborated by some other facts or evidence. (People v. Thompson (1978), 57 Ill. App.3d 134, 139-40, 372 N.E.2d 1052, 1057.) Testimony of the victim alone is sufficient to support the conviction of rape if the testimony is clear and convincing. (People v. Luigs (1981), 96 Ill. App.3d 700, 704, 421 N.E.2d 961, 965.) Viewing the record as a whole, we find that the minor's testimony was clear and convincing and supported by other facts. Even assuming the minor's testimony was not clear and convincing, her testimony was sufficiently corroborated by (a) her prompt complaint to her mother that respondent "had put some stuff on his tail and tried to put it in her pee pee," (b) the medical evidence indicating a recent trauma to her vaginal area, and (c) her emotional distress evidenced by her crying, her fear of Dr. Pratt and the resistance she put up during the course of the physical examination. (See People v. Sprouse (1981), 94 Ill. App.3d 665, 673, 418 N.E.2d 1070.) Additionally, respondent himself testified that he laid down next to the victim while she was undressed, that he had a partial erection, and "my thing kind of touched her thing." In a bench trial, the credibility of the witnesses and the weight given their testimony is for the determination of the trial court, and its finding will not be disturbed unless the evidence is so unsatisfactory as to raise a reasonable doubt of guilt. (94 Ill. App.3d 665, 672, 418 N.E.2d 1070, 1075.) We decline to *151 disturb the finding of the trial court.
 5 Respondent next contends that the State failed to prove the essential element of force beyond a reasonable doubt. Respondent claims that the minor victim offered little or no resistance and contends that this is supported by the fact that she was fully aware of the presence of other persons, yet no evidence was presented that anyone at the respondent's residence heard the minor tell the respondent to stop. Respondent argues further that there was no showing that this was a life-threatening situation or that the victim was paralyzed by fear.
There is no definite standard fixing the amount of force which the State is required to prove to show rape. If circumstances show resistance to be futile or life-endangering or if the victim is overcome by superior strength or fear, useless or foolhardy acts of resistance are not required. (People v. Genus (1979), 74 Ill. App.3d 1002, 1009, 393 N.E.2d 1162, 1167.) As the court in People v. Sprouse (1981), 94 Ill. App.3d 665, 418 N.E.2d 1070, stated, citing People v. Pointer (1972), 6 Ill. App.3d 113, 118, 285 N.E.2d 171, 175:
"`Those facts which will, or will not, establish these elements [of the offense charged] beyond a reasonable doubt will vary as might ages, or places or times. For example, the failure of an alleged rape victim to scream or cry out may be of pivotal importance in one case and quite insignificant in another. * * * It is the totality of facts and circumstances which must be carefully examined in each case.' [Citation.]" 94 Ill. App.3d 665, 672, 418 N.E.2d 1070, 1075.
The court in Sprouse found that even if the 11-year-old victim did not cry out, that fact did not create a reasonable doubt as to defendant's guilt, even though there were other people in the house and in close proximity when the rape occurred.
 6 In the case at bar, the record shows that the six-year-old victim did in fact cry out. Respondent himself admitted that the child yelled out more than once during the incident. When asked why she didn't resist, the victim responded, "Because he was sitting on my stomach and he was too big." The record reveals that respondent was extremely overweight. A child is not expected nor required to offer as much resistance as might be expected of an adult woman. (People v. Thompson (1978), 57 Ill. App.3d 134, 141, 372 N.E.2d 1052, 1058.) Given the disparity in size between the six-year-old victim and the 14-year-old respondent, we conclude that the evidence was sufficient to support the trial court's finding of force. Additionally, it has been held that force is inherent in any act of intercourse with a six-year-old girl, *152 and a child that age is conclusively presumed to be unable to legally consent to an act of carnal knowledge. People v. Strait (1983), 116 Ill. App.3d 110, 113, 451 N.E.2d 631, 632.
For the reasons stated above, the adjudication of delinquency is affirmed.
Affirmed.
JONES, P.J., and KARNS, J., concur.