Michael Daniel was convicted of two counts of sexual abuse in the first degree and was given two ten-year concurrent sentences.
The single issue on appeal relates to prosecutorial misconduct and whether the conduct was so prejudicial to the appellant that state law requires that he be given a new trial. We conclude that the law requires that a new trial be granted in this case.
The following occurred during and after cross-examination of the appellant:
"Q: Do you know Willie Frank Parker?
"A: Yes, I do.
"Q: Isn't it a fact — let me ask you this first of all: isn't it a fact that you got Willie Frank Parker to offer Helen March two thousand dollars to drop these charges?
A: No, I didn't.
"Q: That's not true?
"A: It's not true.
"MR. COOK: Your Honor, we object and move for a mistrial unless the state ties that up.
"THE COURT: Come around. (Bench conference held outside the hearing of the jury.)
"THE COURT: Are you going to tie that up?
"MR. WHALEY: His mother — the mother of these children told me Willie Frank Parker came to her and told her that Michael said he would give two thousand dollars to drop the charges.
"MR. COOK: Your Honor, I move for a —
"THE COURT: (Inaudible.)
"MR. WHALEY: I don't know whether
"THE COURT: You better.
"MR. WHALEY: Okay.
"MR. COOK: What was Your Honor's ruling?
"[THE COURT]: I told him that I would withhold ruling on the motion for the time being. I will allow the testimony to be admitted de bene, but I told him that I expect him to tie it up.
"MR. COOK: Yes, sir. That's all I ask. Thank you.
"(Bench conference concluded; jury present.)"
"* * *
[Discussion outside the hearing of the jury.]
"THE COURT: Okay. Do you have any further testimony in rebuttal at this time?
"MR. WHALEY: Let me think.
"MR. COOK: The witness's name — the person's name — I don't recall it — that he said that we tried to bribe him, and that person needs to be here at some time.
"THE COURT: Do y'all intend to call anybody to prove anything about the business about the —
"MR. WHALEY: If you will require us to, we will be glad to. *Page 1124 
"THE COURT: I don't — I will have to grant the mistrial —
"MR. WHALEY: The mother is out here now if you want us to call her. We will call the mother, put the testimony in.
"MR. COOK: The mother would be saying somebody else told her.
"THE COURT: I know it was improper without doing that, you know. I made a statement at the (inaudible) to the father to prove (inaudible).
"MR. WHALEY: I understand, Your Honor. And I was going by what the mother told me.
"THE COURT: Well, is she here? Can she testify?
"MR. WHALEY: Yes, sir.
"THE COURT: I'm not even sure that — I tell you what I'm going to do. It's 5:20 now. I'm going to send the jury home.
"MR. COOK: All right. Thank you. (Bench conference concluded; jury present.)"
"* * *
[Discussion without jury being present]
"MR. COOK: Are we going to discuss the —
"THE COURT: Okay. Now, let's talk a little bit more about the matter of what y'all are going to do about the statement — see, that's really a problematical statement where you have thrown out there without having it backed up. I think that you would have a sufficient basis for asking it on cross examination with the mother's testimony. But I think that if he insists on his objection, that you would have to put the mother on the stand to testify to that.
"MR. COOK: To testify that somebody else told her that?
"THE COURT: Yes, sir.
"MR. COOK: She can testify that somebody else told her that, and that's sufficient to prove that my client said it?
"THE COURT: No. It's sufficient to lay a foundation of probable cause for him asking the question on cross-examination.
"MR. COOK: Well, sir, the only thing is though, once you inject a thing such as — if they put her on and she testifies, yeah, that somebody told her they tried to bribe them, that strengthens the thing and even doubles it against my client when it could be a total and false lie.
"THE COURT: Well, there is nothing wrong with it if there is a basis for asking the question. Cross-examination — there's a wide latitude in cross-examination. And all they've got to show is that they had a reasonable basis and they didn't just make up something like that. They had a basis for asking the question, and he denied it.
"MR. COOK: My point would be Willie Frank Parker lived here and resided here in this town, has been — Mr. Whaley has called every other witness involved including mine —
"THE COURT: Well, I don't think that I will require them to put him on the stand since that would be a crime in and of itself. That would violate his fifth amendment rights for him to have done that. I believe that would be called obstructing justice or an attempt to obstruct justice. So what do you want them to do? Do you want them to put the mamma on the stand and testify that —
"MR. COOK: I'm trying to understand what she's going to testify to. I want to know what they expect her to testify to if they will tell me.
"MR. WHALEY: We expect her to testify, Your Honor — what she told me was that — that Willie Frank Bailey come to her and told her that Mr. — Mr. Daniel said that if she would take two thousand dollars and drop the charges, he would like for her to drop the charges. Essentially that's what she told me. I will be glad to call her and put her on the stand.
"MR. COOK: I want them to at least do that. I'm insisting on my motion for a mistrial, Judge. I —
"THE COURT: Okay. I'm not going to grant the mistrial, because the way I understand the matter of cross-examination and the latitude the state would have is that in order to ask a question of that type they would have to have a reasonable basis for feeling that that is a fact. And that, I *Page 1125 
think, is what they've got. If they put that on, then it's not misconduct and they had a basis. And, at this point in time, he has simply denied — he has simply answered the question in the negative, and we could let it drop at that point.
"MR. COOK: But, Your Honor, it implies such a wrongdoing and it implies — it's — it's trying him by implication rather than by proof.
"THE COURT: I understand it. I would rather that it hadn't happened but, at the same time, I don't think it's basis of a mistrial, and I will insist on him backing it up with proof by putting her on the stand. But I will not insist on them backing it up with proof by coming in and having the fellow testify against his own interest and testify to facts that could get him put in jail.
"MR. COOK: Will you tell me exactly the name of the person she said it so that I can get it?
"THE COURT: What's that person's name?
"MR. WHALEY: Willie Frank Bailey, Your honor — Parker.
"THE COURT: Willie Frank Parker.
"MR. COOK: Willie Frank Parker."
"* * *
[Proceeding outside the jury's presence.]
"THE COURT: On this case that we are trying, now overnight in reflecting on the matter of the state asking the question about the two thousand dollar offer, several things have occurred to me: one is that I think that it probably would do more damage than good to have the mother testify that this offer was made. I think that that would be hearsay, and I think it would be some problems with it. On the other hand, I think that the only real question that the court needs to raise about it, a question such as that which occurred during cross-examination is whether there was a reasonable basis for the prosecutor to ask that question. The defendant voluntarily took the stand, and he was subject to strenuous cross-examination. And the only evidence that has gone in is the defendant's answer which was, no, that he did not authorize that. And I think the only inquiry that I need to make was whether there was a reasonable basis for it. I'm convinced that there was a basis for the question to be asked, and it was not a prosecutorial misconduct. And I think as far as I'm concerned, I will just simply overrule the objection, deny the motion for mistrial. And I will allow the matter to stand as it is. I'm comfortable with the situation being exactly as it is. I don't think there is anything wrong with the question that was asked.
"MR. COOK: I will, of course, except to the court's ruling. And, when you're asking someone if they did not offer a bribe to drop the charges and there's been absolutely no evidence of that fact, I mean, and no testimony bearing on that fact —
"THE COURT: It doesn't have to be. Just got to be a basis for the question.
"MR. COOK: Yes, Your Honor. But there's been nothing under oath that says there's a basis for the question. And I would at least like to ask this lady out of the presence of the jury what she has said and what she has told. But —
"THE COURT: I'm comfortable with it exactly like it is.
"MR. COOK: All right. Well, of course, we will take exception to the court's ruling.
"THE COURT: You can call her if you want to.
"MR. WHALEY: She's present.
"MR. COOK: I'm not going to call her. I'm going to call the guy. I found him last night, too.
"MR. WHALEY: If he does that, we can call her to state that he did tell her that.
"MR. COOK: I issued a subpoena for him. And, when I issued a subpoena during mid-afternoon when I heard that that comment was made, by the time I could get to him, the state had him brought to them for cross-examination questioning in their office before I could even discuss it with him. That was by — before — you know, Your Honor, we did not leave court until late. By six o'clock, the state had him picked up by a deputy sheriff and in their *Page 1126 
office and questioned him before I could even talk to him when I issued a subpoena just to find out if this happened.
"THE COURT: Okay."
The alleged prosecutorial misconduct consisted of making prejudicial allegations without being able to prove them by lawful evidence. The "lawful evidence" standard applies in Alabama and the good faith of prosecutor or lack thereof is not the test.
This case is governed by the principles of law as set out in Wysinger v. State, 448 So.2d 435 (Ala.Cr.App. 1983). There the court quoted Young v. State,363 So.2d 1007, 1012 (Ala.Cr.App. 1978), for the proposition that for the state's attorney to ask a question which implies the existence of a factual predicate which the examiner knows he cannot support by the evidence is unprofessional conduct.Bezotte v. State, 358 So.2d 521, 525 (Ala.Cr.App. 1978), is to the same effect. Both of those cases involved questions about prior convictions. We stated inWysinger, at 438:
 "Laying prejudicial allegations before the jury 'by dint of cross-examination without being prepared to prove them is generally regarded as reversible error.' United States v. Brown, 519 F.2d 1368, 1370 (6th Cir. 1975). It is improper for the prosecutor 'to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth.' United States v. Harris, 542 F.2d 1283, 1307 (7th Cir. 1976); 6 J. Wigmore, Evidence
Section 1808 (Chadbourn rev. 1976). 'Where the state, in laying a foundation for impeachment, insinuates the existence of prior inconsistent statements by the witness and the witness denies making the statement, the state must produce evidence that the prior inconsistent statement was made.' People v. Sprouse, 94 Ill. App.3d 665, 50 Ill.Dec. 76, 418 N.E.2d 1070, 1077 (1981); see also United States v. Bohle, 445 F.2d 54, 73-74 (7th Cir. 1971). In such cases, the state may have a duty to complete its impeachment of the witness or show that the prosecutor has 'evidence of or reasonable ground to believe the truth of its implication.' Lee Won Sing v. United States, 215 F.2d 680, 681 (D.C. Cir. 1954); see United States v. Mackey, 571 F.2d 376, 386 (7th Cir. 1978)."
This was reversible error and was ineradicable. This case is reversed and the cause remanded for a new trial or other proceedings not inconsistent herewith.
REVERSED AND REMANDED.
All the Judges concur.