The appellant, Bruce Wade Covington, was convicted of burglary in the second degree and rape in the first degree. He was given concurrent sentences of 10 years' and 20 years' imprisonment, respectively. On this appeal from those convictions the appellant argues that he was entitled to a mistrial because "[t]he prosecutor's questions, and statements made in the presence of the jury, constituted blatant assertions that there was evidence not before the jury of an extremely damning fact: that threats made by Covington and his brother had induced [defense witness David] Smith to give false exculpatory testimony." Appellant's brief at 30.
 THE FACTS
The victim in this case was a 20-year-old Korean female. She knew the appellant, having met him on two prior occasions, and positively identified him as her assailant.
The appellant's defense was alibi. He claimed that he was at home at the time of the burglary and rape. It is undisputed *Page 124 
that shortly before the rape, the appellant was in the company of David Quinley and David Smith. The appellant also claimed that he had shaved his pubic hair at that time "in order to get rid of the crabs." R. 236. The victim testified that she saw the appellant's pubic hair at the time of the rape.
Quinley was a witness for the prosecution and testified that shortly before the rape, the appellant made statements to him and Smith indicating his desire to have sexual intercourse with an oriental female.
At trial, Smith testified as a defense witness that he, Quinley, and the appellant were at his sister's house prior to the rape. He testified that "sex" was not a subject of their conversation. However, Smith admitted on direct examination that he had previously told a Mobile County sheriffs detective that the appellant had made some remarks that night "about getting some oriental stuff that night." R. 289. At trial, Smith claimed that he had lied to the detective and that the appellant "did not tell [him] that. David Quinley told [him] that. And [he] told the detective that because [he] was mad because [he] thought [the appellant] had done that to Kim." R. 290. Later, on cross-examination, Smith stated, "I don't know if I believe that he did it or not. So I ain't going to sit up here and lie and that is why I'm saying this now." R. 297. Smith also testified that Quinley was "known to lie." R. 303. However, when asked, "And you are saying that David Quinley is just making this up?" Smith responded, "I ain't saying that one bit." R. 303.
During her cross-examination of the appellant, the assistant district attorney sought to establish that Smith's trial testimony was false and that either the appellant or the appellant's brother had coerced or threatened Smith into giving false testimony. On cross-examination of the appellant, the following occurred in the presence and hearing of the jury:
 "Q. Have either you or your brother Brian made threats against David Smith or —
 "MR. POWERS [defense counsel]: Object to the question as insulting.
 "THE COURT: I sustain the objection unless you are prepared to offer evidence to that effect, Ms. Murphree [assistant district attorney].
"MS. MURPHREE: I can put on David Smith's mother.
 "THE COURT: I mean if you tell me that you have evidence to this effect then I am going to allow the question to be asked and answered. If you tell me you do not then I will not let him answer.
 "MS. MURPHREE: Your Honor, I can represent to you that I do not have David Smith's mother subpoenaed but I can represent to the Court and I will do it outside the presence of the jury if you want me to, what she has personally told me regarding threats —
 "THE COURT: If she is not a witness to testify then you can't prove it unless you represent to me that you will get her.
 "MS. MURPHREE: May I take — I will do my best to. If I —
 "THE COURT: Well, then I will not allow the question.
"MS. MURPHREE: She may be out in the hall.
 "THE COURT: All right. I will let you check on that before I will allow the question to be asked. But unless you are able to substantiate such a question then the question is an improper question." R. 250-51.
The prosecutor then questioned the appellant about another matter and established that the appellant did intend to call Smith as a defense witness. R. 255
On cross-examination of defense witness Smith, the following occurred:
 "Q. [by the prosecutor]: Mr. Smith, isn't it a fact that shortly after this happened you told the truth when you talked to David Hill and you have talked to Bruce [the appellant] since then haven't you?
"A. On and off.
". . . .
 "Q. Okay. Have you talked to Bruce [the appellant] about your testimony in this case? *Page 125 
"A. No, I haven't.
"Q. Has Bruce threatened you?
"A. No, he hasn't.
"Q. Has his brother Brian threatened you?
"A. No, he hasn't.
 "Q. Are you aware that your mother called me last night to tell me —
 "MR. POWERS: I am going to object to that your Honor.
 "THE COURT: I have already sustained the objection —
 "MS. MURPHREE: He had indicated that he could get his mother to Court.
 "THE COURT: I have already sustained the objection previously unless you make the proper representation to this Court.
 "MS. MURPHREE: The representation I am making is that he said he could get his mother to Court.[1]
"Q. Is that correct Mr. Smith?
 "THE COURT: No, that's not your question though, is it, Ms. Murphree?
"MS. MURHPREE: It is now.
 "THE COURT: I am not going to allow you to go into that matter unless you can show the Court that you can go ahead and back up any question that you ask this witness. Not whether or not you can get his mother to Court but whether or not you can back up anything that is said.
"MR. POWERS: Your Honor, I move for a mistrial.
"THE COURT: Only proper evidence.
"MR. POWERS: I move for a mistrial.
 "THE COURT: The Court will deny the motion. Go ahead Ms. Murphree.
 "Q. David Smith, i[s] your mother available to come to Court today?
 "MR. POWERS: Your Honor, I am going to object to this line of questioning. It's getting back to what Your Honor has already ruled on.
 "THE COURT: I will let him answer that question if he knows the answer.
"A. No, she is not available today.
 "Q. Do you see that lady sitting back there in the back of the Court? Stand up for me. Did you initially tell her when I sent her out to —
 "THE COURT: Ms. Murphree, you are beating a dead horse. I have already ruled on that issue.
 "MS. MURPHREE: I'm sorry then, Your Honor. I am missing your point.
"THE COURT: Proceed to another matter.
"MS. MURPHREE: If I can —
"THE COURT: Proceed to another matter.
"MS. MURPHREE: May I just ask one other —
 "THE COURT: Proceed to another matter. Well, we will take a recess. May I see the lawyers in my office?" R. 297-300 (footnote added).
There is no record of what occurred in the judge's office.
When the trial resumed, the following occurred:
 "MR. POWERS: I renew at this time my motion for a mistrial.
 "THE COURT: I deny the motion. You may proceed Ms. Murphree." R. 300.
Shortly after this exchange, the defense rested its case. The prosecution presented no rebuttal.
 THE IMPROPRIETY OF THE PROSECUTOR'S COMMENTS
We find the prosecutor's conduct highly improper. Statements made by the prosecution that imply or suggest that there exists additional evidence, which has not been introduced and which could prove the defendant's guilt are "intolerable" and highly prejudicial. Ex parte Washington, 507 So.2d 1360, 1362
(Ala. 1986).
 "It has long been the rule in Alabama that, although counsel should be given considerable latitude in drawing reasonable inferences from the evidence, they may not argue as a fact that which is not *Page 126 
supported by the evidence. . . . This has been the rule since it was first stated in McAdory v. State, 62 Ala. 154[, 163] (1878):
 " '[C]ounsel should not be permitted to comment upon facts not proved before the jury as true, and not legally competent and admissible as evidence. However reluctant an appellate court may be to interfere with the discretion of a primary court in regulating the trial of cases, if it should appear that it had refused, to the prejudice of a party, to compel counsel to confine their arguments and comments to the jury, to the law and evidence of the case under consideration — if it had permitted them to refer to and comment upon facts not in evidence, or which would not be admissible as evidence, it would be a fatal error. . . .' "
Washington, 507 So.2d at 1361-62. See also King v. State,518 So.2d 191, 194 ((Ala.Cr.App. 1987). "[F]or the state's attorney to ask a question which implies the existence of a factual predicate which the examiner knows he [or she] cannot support by the evidence is unprofessional conduct." Daniel v. State,534 So.2d 1122, 1126 (Ala.Cr.App. 1988).
 "The alleged prosecutorial misconduct consisted of making prejudicial allegations without being able to prove them by lawful evidence. The 'lawful evidence' standard applies in Alabama and the good faith of [the] prosecutor or lack thereof is not the test.
". . . .
 " 'Laying prejudicial allegations before the jury "by dint of cross-examination without being prepared to prove them is generally regarded as reversible error." United States v. Brown, 519 F.2d 1368, 1370 (6th Cir. 1975). It is improper for the prosecutor "to ask a question which implies a factual predicate which the examiner knows he cannot support by evidence or for which he has no reason to believe that there is a foundation of truth." United States v. Harris, 542 F.2d 1283, 1307 (7th Cir. 1976).' "
Daniel v. State, 534 So.2d 1122, 1126 (Ala.Cr.App. 1988). See also Hooper v. State, 585 So.2d 142, 151 (Ala.Cr.App. 1991), cert. denied, ___ U.S. ___, 112 S.Ct. 1295, 117 L.Ed.2d 517
(1992); Gillespie v. State, 549 So.2d 640, 645
(Ala.Cr.App. 1989). In Ex parte Peagler, 516 So.2d 1369, 1371
(Ala. 1987), the Alabama Supreme Court held that in attempting to impeach a hostile witness by questioning the witness about a prior conviction, a prosecutor must be prepared to rebut a negative answer with proper proof of the prior conviction: " 'When a witness denies that he has been convicted of the crime, it becomes incumbent upon the impeaching party to prove the conviction.' "
Here, the comments of the prosecutor imply that the prosecutor had personal knowledge of the incriminating evidence, which she could not prove because of a missing witness. The prosecutor, through her comments, attempted to assume the role of a witness. See Waldrop v. State,424 So.2d 1345, 1347-48 (Ala.Cr.App. 1982).
 THE MOTION FOR MISTRIAL
The general rule is stated in Ex parte Marek, 556 So.2d 375,379 (Ala. 1989):
 "If a litigant points out an alleged error and asks for such drastic relief as a mistrial, then the litigant is certainly 'objecting' to the question or line of questioning made the basis of the motion for the mistrial. . . .
 ". . . [W]hen a litigant makes a motion for a mistrial immediately after the question or questions are asked that are the grounds made the basis of the motion for the mistrial, and the grounds for the motion are clear and definite, then the motion for mistrial will preserve for review lesser prayers for relief, such as an objection or motion to strike. We make this holding because, as we stated earlier, a litigant who requests such drastic relief as a mistrial implicitly requests lesser relief that is proper, in case the greater relief is denied or is found to be improper."
"Marek indicates that a motion for mistrial compensates for the lack of an objection or *Page 127 
motion to strike as long as the motion for mistrial followsimmediately after the offending question." Robinson v. State,584 So.2d 533, 538 (Ala.Cr.App.) (emphasis in original), cert. quashed, 584 So.2d 542 (Ala. 1991).
There is no requirement that in making a motion for a mistrial, defense counsel include a request for instructions to disregard.
 "Furthermore, it should be noted that a requirement that the defendant requests the Court to instruct the jury to disregard the prosecutor's statement could be construed to constitute a waiver of his motion for a mistrial because of the antithesis of the two conflicting requests. The motion for a mistrial proceeds on the premise of the ineradicable nature of the remarks. A request for instructions, on the other hand, concedes that the trial [c]ourt, by appropriate charge, may disabuse the jurors' minds of any prejudicial effect of such statements and allow the defendant to receive a fair trial. It is at least arguable that unless alternatively made, or so separated by time as to constitute separate motions, a request for the latter (instruction to disregard) could be said to waive the former (motion for mistrial)."
Stennett v. State, 340 So.2d 65, 67 (Ala. 1976).
However, here defense counsel made only two objections and two requests for a mistrial. Defense counsel's only grounds of objection were that the "question [was] insulting" and that the assistant district attorney was "getting back to what Your Honor has already ruled on." Defense counsel never stated any ground for his motion for a mistrial. Defense counsel never stated a ground for his requests for a mistrial.
Although defense counsel never stated the ground of objection raised on appeal, it is obvious that the trial court perceived the impropriety of the comments of the prosecutor. Indeed, it was the trial court that initially and repeatedly informed the prosecutor that she must confine her questions to matters that she could prove. " 'Specific objection or motions are generally necessary before the ruling of the trial judge is subject to review, unless the ground is so obvious that the trial court's failure to act constitutes prejudicial error.' " Ex partePurser, 607 So.2d 301 (Ala. 1992). "An objection, of course, should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her initial ruling in light of the grounds alleged and to change it, if deemed necessary." Ex parte Webb, 586 So.2d 954, 957
(Ala. 1991). It is clear that the trial court understood the basis for the objection. See Felder v. State, 593 So.2d 121,122-23 (Ala.Cr.App. 1991); Marshall v. State, 570 So.2d 832, 834
(Ala.Cr.App. 1990). "[T]he record clearly shows that the trial judge was aware of the objection and the reason counsel was requesting it." Ex parte McCall, 594 So.2d 628, 631 (Ala. 1991). See also Ex parte Pettway, 594 So.2d 1196, 1200 (Ala. 1991) ("[i]t is apparent from the colloquy between Pettway's counsel and the court that the court was aware of the substance of the instructions that counsel was requesting, and the reasons why such instructions should be given under the particular facts of his case").
In this case, it was the trial court who aggressively confined the prosecutor to questions for which she could properly establish a factual basis. The trial court sustained defense counsel objections to the prosecutor's improper comments, although it denied the two general motions for mistrial. Defense counsel never requested any curative action.
We do not think that the comments of the prosecutormandated the granting of a mistrial because the remarks of the prosecutor could have been eradicated by the prompt action of the trial court. " 'A motion for a mistrial should not be granted where the prejudicial qualities of the comment can be eradicated by action of the trial court.' " Henry v. State,468 So.2d 896, 901 (Ala.Cr.App. 1984), cert. denied, *Page 128 468 So.2d 902 (Ala. 1985). Even an improper comment on a defendant's exercise of the right against self-incrimination does not warrant a mistrial "if the trial court sustains an objection to improper remarks and promptly and appropriately
instructs the jury of the impropriety of those remarks." Exparte Wilson, 571 So.2d 1251, 1265 (Ala. 1990) (emphasis in original).
"[A] motion [for a mistrial] is addressed to the sound discretion of the trial court, and its ruling will not be reversed in the absence of a clear showing of abuse of discretion." Ex parte Jefferson, 473 So.2d 1110, 1114
(Ala. 1985), cert. denied, 479 U.S. 922, 107 S.Ct. 328,93 L.Ed.2d 300 (1986). "A trial judge is allowed the exercise of broad discretion in deciding whether th[e] high degree of necessity [for the granting of a mistrial] is present." Woodsv. State, 367 So.2d 982, 984 (Ala. 1978).
Here, defense counsel never requested curative instructions. Defense counsel never made a motion to exclude or a motion to strike the prosecutor's improper remarks. Even on this appeal it is not argued that the trial court committed reversible error in failing to give curative instructions. The appellant takes an "all or nothing" approach; he was entitled to a mistrial and nothing less. Indeed, had the trial court instructed the jury to disregard the prosecutor's remarks and denied the requested mistrial, the argument on appeal, in all probability, would be that in giving those instructions to disregard the trial court only exacerbated and emphasized the prejudicial effect of the prosecutor's comments.
In this case, the real question is not whether the trial court erred in denying the motion for a mistrial, but whether the trial court erred in failing, on its own and without request, to instruct the jury to disregard the improper statements of the prosecutor after sustaining the appellant's objection but denying the request for a mistrial. Without question, instructions to disregard would have been the better practice and are highly encouraged by this Court.
"In considering a motion for a mistrial, the trial judge has much discretion. On review, this Court will not reverse the trial court's denial of a motion for a mistrial based on a party's improper statements 'unless it affirmatively appearsfrom the entire record that the statements involved were probably prejudicial to the [complaining party]. . . ." GeorgiaCas. and Sur. Co. v. White, 582 So.2d 487, 495 (Ala. 1991) (emphasis in original).
Under the circumstances of this case, the appellant's conviction is not due to be reversed because the trial court, in denying the request for a mistrial, did not, on its own motion, give curative instructions to the jury to disregard the comments of the prosecutor. The trial court sustained the appellant's objections and actively intervened during the course of the trial to prevent the prosecutor from commenting on facts which she could not prove.
Although we affirm the judgment of the circuit court we find applicable the comments of the Alabama Supreme Court in Exparte Farley, 406 So.2d 1050, 1051 (Ala. 1981):
 "Trial courts are possessed of ample powers to deal with conduct of attorneys who fail to conduct themselves according to high standards of courteous and correct behavior in the trial of cases; the trial courts should not hesitate, in proper instances, to exercise those powers."
The judgment of the circuit court is affirmed.
AFFIRMED.
All Judges concur.
[1] On cross-examination, the appellant testified that he intended to call Smith as a defense witness. There is no indication in the record, other than this statement of the prosecutor, that Smith ever testified that he "could get his mother to Court." *Page 129