In a retrial, William Ray Weaver was convicted of felony murder committed during a robbery; felony murder committed during a burglary; first-degree robbery; second-degree burglary; and second-degree theft. He was sentenced as a habitual offender to life imprisonment without parole for each of the felony-murder convictions, to life imprisonment without parole for the first-degree robbery conviction; to life imprisonment for the second-degree burglary conviction; and to life imprisonment for the second-degree theft conviction. On appeal, the Court of Criminal Appeals affirmed Weaver's convictions for the two felony-murder offenses, but held that the trial court should vacate Weaver's convictions and sentences for *Page 984 
first-degree robbery, second-degree burglary, and second-degree theft, on the basis that those offenses were, as to the two felony-murder offenses, lesser included offenses. See Weaverv. State, 763 So.2d 972 (Ala.Crim.App. 1998). We reverse and remand.
Weaver was originally convicted of the capital offense of murder during the course of a robbery and was sentenced to death. The Court of Criminal Appeals affirmed that conviction, but this Court reversed that affirmance and remanded for a new trial.Weaver v. State, 678 So.2d 260 (Ala.Crim.App. 1995), rev'd,678 So.2d 284 (Ala. 1996). This case is now on review following Weaver's convictions in his second trial.
The crimes for which Weaver was convicted stemmed from the robbery of the Battery Mart in Attalla. The evidence indicated that Weaver, along with two other men, used a crowbar to pry open the door to the building. During the break-in, the owner, Aubrey Ray Estes, confronted Weaver and his two accomplices. One of the accomplices testified at Weaver's trial that Weaver followed Estes into his office and later came out carrying a crowbar and money. Estes was later found dead on the floor of his office. The autopsy indicated that Estes had died of a heart attack induced by 13 blows to the head and body from a blunt object. The bruises and wounds on Estes's body were consistent with his having been beaten with a crowbar.
Weaver makes three arguments on certiorari review: 1) that his constitutional right against double jeopardy was violated by the multiple verdicts and the multiple sentences imposed upon him for a single murder; 2) that his constitutional right to a speedy trial was violated by the denial of his motion to dismiss for lack of a speedy trial; 3) that he had a constitutional right to have a "no-adverse-inference" jury charge given and that that right was violated by the trial court when it refused to charge the jury as to Weaver's right not to testify. We reverse the judgment of the Court of Criminal Appeals and remand for that court to order further proceedings, because the trial court erred in refusing to charge the jury as to Weaver's right not to testify. We need not address the merits of Weaver's other arguments.
We note that under our holding in Ex parte Rice,766 So.2d 143 (Ala. 1999), Weaver would be entitled to have this case remanded for the trial court to enter a new order adjudging him guilty of one felony murder and sentencing him for that single offense. However, because we are reversing and remanding for a new trial based on the failure of the trial court to give a no-adverse-inference jury charge, the double-jeopardy issue is now moot.
Weaver did not testify at trial. At the close of the jury charge, but before the jury retired to deliberate, the following exchange took place:
 "MR. BUTTRAM [defense counsel]: What about on his right to remain silent and not testify and to have that not used against him? You didn't give any instruction on that.
 "THE COURT: Well, it is not mandatory to give anything on that. It hasn't been raised as an issue.
 "MR. BUTTRAM: Well, he didn't testify. I don't think that —
 "THE COURT: Well, you went through that in voir dire. It is too late now.
"MR. BUTTRAM: I don't think it's too late. We object to it.
"THE COURT: Okay. Anything further?
"MR. PITTS: The State is satisfied."
(R. 326-27.)
Weaver argues that the trial court erred in refusing to instruct the jury that Weaver had a right to remain silent and that it should draw no adverse inference from his choosing not to testify. The State argues that the issue was not preserved for appellate review because, it says, Weaver's objection *Page 985 
to the failure to give the instruction was not specific enough.
It is well settled that when the defendant asks the court to give the jury a no-adverse-inference instruction, the court's failure to give such an instruction is reversible error. SeeCarter v. Kentucky, 450 U.S. 288 (1981). This Court stated inPerry v. State, 368 So.2d 310, 312 (Ala. 1979): "[I]t has long been the law of this State that the constitutional guarantee against self-incrimination (Art. [I], § 6, Alabama Constitution 1901), as augmented by [Ala. Code 1975, § 12-21-220], renders the refusal of a requested jury instruction on the legal effect of an accused's exercise of that right reversible error." The issue in this case is whether the objection to the trial court's refusal to give such an instruction was preserved for appellate review.
The Court of Criminal Appeals held that defense counsel's post-charge dialogue with the trial court did not amount to a request for a jury instruction. We disagree. While the proper procedure for requesting a jury charge is to file a written request with the trial court, this Court has held an oral request for a jury charge to be sufficient, provided, if the trial court does not give the charge, that the defendant objects to the refusal and the court is aware of the objection and the reason counsel is requesting the instruction. Ex parte McCall,594 So.2d 628 (Ala. 1991).
The Court of Criminal Appeals similarly held, in Felder v.State, 593 So.2d 121, 122-23 (Ala.Crim.App. 1991): "Although the `magic words' were never employed and although defense counsel should have been specific in stating the grounds of his objection, it is apparent that both defense counsel and the trial court understood that the appellant's constitutional right against self-incrimination was involved." In Felder, the following dialogue took place during a "charge conference" held before the parties made their closing arguments:
 "THE COURT: . . . And [charge number] 22 — You want to get me to make statements about his right not to testify in the case? That appears to be getting into commenting on his decision not to testify.
 "MR. LAWRENCE [defense counsel]: Well, it comes from the court. It doesn't come from the lawyers.
 "THE COURT: I'll allow you to argue that point if you choose, Mr. Lawrence. Mr. Belser [deputy district attorney], you should not go —
"MR. LAWRENCE: I can't argue that point, Judge.
 "THE COURT: Well, Mr. Belser — I'm going to refuse it. I think to open up the can of worms on whether or not — He did not testify in the case, and I caution both of you around that area. I'm going to refuse it. Now, do you have another charge?
 "[Defense counsel makes his objections to the refusal of other requested charges.]
 "MR. LAWRENCE: . . . And Charge Number 22 is a correct statement of the law, and I request that you give that one."
Felder, 593 So.2d at 121.
The trial court did not respond to the last statement by defense counsel. The trial court did not instruct the jury on the defendant's right not to testify, and defense counsel made no objection at the conclusion of the court's oral charge. At a hearing on the defendant's motion for a new trial, defense counsel argued that the defendant had a constitutional right to a jury charge on his right against self-incrimination. The prosecutor and the trial court responded to this argument as follows:
 "MR. BELSER: Judge, I don't have a transcript of the trial, but it's my understanding that the defense attorney did not object to you refusing it. Y'all had discussed it and he just —
 "THE COURT: I don't believe he did either, and I know I would have given a *Page 986 
detailed charge on presumption of innocence. And I'm going to deny your motion for new trial on that point. I give a very detailed charge on presumption and burden of proof. Presentation of evidence, I give a charge that the defense does not have to prove his innocence. The burden is always on the state, and I think it was covered. And I don't recall there being an objection but the record will speak on that."
Felder, 593 So.2d at 122.
The issue in Felder, as in this case, was whether the court's error in refusing to give the requested charge was preserved for appellate review. As in this case, defense counsel and the trial court in Felder disagreed as to whether the instruction must be given. Also, in Felder, as in this case, defense counsel did not make a proper objection to the refusal of the requested charge. However, the Court of Criminal Appeals held in Felder that it would be "unreasonable and both realistically and practically indefensible to hold that the appellant waived this issue." 593 So.2d at 123.
In the present case, it is obvious that the trial court understood that defense counsel was requesting an instruction involving Weaver's right against self-incrimination; however, the trial court did not believe it was required to give such an instruction. The facts in this case are so similar to those inFelder that it would be unreasonable not to follow the holding inFelder. The primary difference between this case and Felder is that in Felder defense counsel objected to the court's refusal to give the jury instruction at a "charge conference" conducted before the court gave any instructions, whereas, in this present case, defense counsel objected after the court had already given its instructions to the jury. The Court of Criminal Appeals held in Wolfe v. State, 555 So.2d 330 (Ala.Crim.App. 1989), that an oral exception made after the court had failed to instruct on the defendant's right not to testify was sufficient to preserve the issue for appellate review.
We conclude that the post-charge dialogue between defense counsel and the trial court indicates a request by the defendant for a no-adverse-inference instruction to the jury and a refusal by the trial court to give the instruction. Defense counsel's words "[w]e object to it" were sufficient, in the context of the colloquy with the trial judge, to preserve the issue for review on appeal. As this Court held in Perry, supra, "the denial of the requested instruction is tantamount to the denial of the fundamental right of the accused, as constitutionally and statutorily mandated, to elect not to testify." 368 So.2d at 312. Although defense counsel could have stated more clearly the defendant's request for a jury instruction and the defendant's objection to the trial court's refusal to instruct, we cannot allow form to prevail over substance when important constitutional rights are involved. Felder, 593 So.2d at 123. The trial court erred in failing to give the requested oral charge regarding the defendant's right not to testify. Therefore, the judgment of the Court of Criminal Appeals is reversed, and this cause is remanded for that court to order a new trial.
REVERSED AND REMANDED.
Maddox, Houston, Cook, See, Lyons, Johnstone, and England, JJ., concur.
Brown, J., recuses herself.*
* Justice Brown was a member of the Court of Criminal Appeals when that court considered the case. *Page 987