BOLIN, Justice.
 

 Jeffery Hatfield was convicted of the capital offense of murder committed during a burglary, a violation of § 13A-5-40(a)(4), Ala.Code 1975. The trial court sentenced him to life imprisonment without the possibility of parole. Hatfield appealed. The Court of Criminal Appeals affirmed Hatfield’s conviction and sentence in an unpublished memorandum. (No. CR-06-1613, Dec. 7, 2007), 19 So.3d 265 (Ala.Crim.App.2007) (table). Hatfield subsequently petitioned this Court for a writ of certiorari, and we granted certiorari review to address whether the decision of the Court of Criminal Appeals conflicts with
 
 Toles v. State,
 
 854 So.2d 1171 (Ala.Crim.App.2002), and
 
 Ex parte Weaver,
 
 763 So.2d 982 (Ala.1999). We conclude that it does, and we reverse the judgment of the Court of Criminal Appeals.
 

 On appeal in the Court of Criminal Appeals Hatfield raised the issue whether the trial court erred in failing to give jury instructions that included various lesser offenses included within the capital offense of murder committed during a burglary. The Court of Criminal Appeals affirmed Hatfield’s conviction, holding that Hatfield had failed to preserve that issue for appellate review. The only issue Hatfield raises in his petition for the writ of certiorari is whether he preserved for appellate review the issue whether the trial court erred by not instructing the jury on the lesser-in-
 
 *734
 
 eluded offense of felony murder. On the preservation issue the Court of Criminal Appeals, in its unpublished memorandum, held:
 

 “[Hatfield] argues that the trial court erred by not instructing the jury on the lesser included offense of felony murder. Although he objected when the court declined to give the requested instruction and after the trial court’s oral charge, he did not state any specific grounds in support of the objections.
 

 “ ‘No party may assign as error the court’s ... failing to give [an] ... instruction ... unless the party objects thereto before the jury retires to consider its verdict, stating the matter to which he or she objects and the grounds of the objection.’
 

 “Rule 21.3, Ala. R.Crim. P. Because [Hatfield] did not state any specific grounds in support of his objections, he did not preserve this argument for our review.
 
 See
 
 Rule 21.8, Ala. R.Crim. P.;
 
 Bullock v. State,
 
 697 So.2d 66 (Ala.Crim.App.1997). Accordingly, we affirm the trial court’s judgment.”
 

 Attacking the Court of Criminal Appeals’ holding that the issue was not preserved for appellate review because no specific grounds were given to support his objections, Hatfield quotes the following colloquy among the trial court, the prosecutor (JoBeth Murphree), and defense counsel (Deborah McGowin and Cindy Powell) during the charge conference:
 

 “THE COURT: Let’s go back to the felony murder. Yeah, felony murder.
 

 “MS. McGOWIN: What felony murder says is [§] 13A-6-2(S), [Ala.Code 1975,] ‘he commits or attempts to commit arson in the first degree, burglary in the first or second degree,’ which we have per the facts, ‘escape in the first degree, kidnapping in the first degree’—
 

 “THE COURT: Don’t go through all of them. Just talk about the burglary.
 

 “MS. McGOWIN: Talk about the burglary or any other felony clearly dangerous to human life and in the course of and in furtherance of the crime that he is committing or attempting to commit or in immediate flight therefrom he or another participant causes the death of any other person. That’s — we got a burglary and a death- — •
 

 “THE COURT: All right. So you have the burglary, let’s say we got the burglary here then someone is killed, the victim.
 

 “MS. McGOWIN: Yes, sir.
 

 “THE COURT: It could have been an intentional killing, but in felony murder the jury could say, well, maybe it was a mistake or an accident or something like that.
 

 “MS. McGOWIN: Felony murder is the intentional killing, Judge, or the killing in furtherance thereof, the initial crime, which would be the burglary.
 

 “THE COURT: I thought the felony murder was like you had a robbery or burglary or something and incidently someone was killed.
 

 “MS. McGOWIN: In furtherance of—
 

 “THE COURT: Yeah, right — of the crime. The base crime was burglary and then somehow this person got killed, but they wouldn’t be killed intentionally, would they? It would be some accidental killing.
 

 “MS McGOWIN: Well, some classic cases or shootings or that sort of thing or a robbery for codefendant robbery one, intentionally shoots, maybe the other is just a, you know, a codefendant. But in this case—
 

 “THE COURT: You know I’ve always had trouble with felony murder. I have a little hang up in my mind about it. I
 
 *735
 
 thought that you had this base which would be you burglarize something or you rob a store and during the process someone is killed, not that you intended to kill the person, but that you are going to be — it’s bumped up this felony murder because you committed this base crime and on top of that you added a killing.
 

 “MS. McGOWIN: Or that the robbery is the initial intent and then the killing takes place in furtherance of the robbery.
 

 “THE COURT: You mean to tell me that you could rob a store—
 

 “MS. MURPHREE: No, no, no.
 

 “THE COURT: And then decide in there that I’m going to go on and kill this witness, bang, and that is a felony murder?
 

 “MS. POWELL: No, that’s an intentional act that you’ve just described is an intentional act with a weapon.
 

 “THE COURT: That was an intentional — that would be capital murder; right? How in that scenario, what is the lesser-included of the felony murder? I mean it doesn’t quite work out that way. What I mean is you’re going to rob a store and someone has a heart attack and dies.
 

 “MS. POWELL: That’s felony murder.
 

 “THE COURT: So the killing is never intentional, it’s some other type of killing in a felony murder; isn’t that right? Is that right?
 

 “MS. POWELL: Right.
 

 “THE COURT: All right. Now, here, now we all understand. So the defendant breaks into the house or remains unlawfully and somehow or another this woman dies, what is accidental or incidental about that when he strangles her?
 

 “MS. MURPHREE: Nothing.
 

 “THE COURT: That’s what I’m saying. It’s either — -that’s why I don’t see the felony murder. The cause of death was strangulation. Are you saying that he did not intend for the strangulation to kill her?
 

 “MS. McGOWIN: I don’t know, Judge. I think that’s a question for the jury.
 

 “THE COURT: Well, none of us know, but I mean is that what the argument would be that we don’t know what his intent was when he put his hands around her throat?
 

 “MS. McGOWIN: Absolutely or what took place—
 

 “MS. POWELL: We don’t have any direct evidence of that. We have evidence from the autopsy that there was crushing of the larynx or compression of the area here. We have no evidence that he put his hands around her neck.
 

 “MS. McGOWIN: And what Dr. Rid-dick said was four point four pounds of pressure which is not a lot of pressure on your jugular veins.
 

 “MS. POWELL: If you are struggling and you’re tussling around and I put my knee right there and apply pressure, that’s going to cause an asphyxiation, and that’s going to cause to cut off the blood flow and cut off the oxygen.
 

 “THE COURT: That seems to be an intentional act.
 

 “MS. POWELL: If what you’re doing is reckless and you’re fighting with someone else and in the course of the recklessness, there is no intent to strangle, there is no intent to kill.
 

 “THE COURT: Yeah. Help.
 

 “MS. MURPHREE: Yes, sir. I don’t see under any even halfway reasonable basis you could see that any of this conduct is reckless. It’s not just the strangulation, it’s the beating her in the face. I don’t know if you looked at
 
 *736
 
 those pictures very closely but she has bruising under the skin here, her eye, her nose, her lip, the lacerations to her head where he beat her in the head and then the strangulation and then the pour pattern of the lamp oil over her body which she at that point was dying and took a couple of last breaths before her body erupted into flames setting the mattress on fire from the radiant heat. Now if you can any way under the shining sun construe that to be reckless, I don’t understand it. So taking it from there, if I may, I don’t see how there can be any lesser-included offenses. Because for instance, if you are going to instruct on intentional murder, the only way that it would be capital murder based on the intent to commit the burglary, I mean the murder is if he were in there with permission. I mean if he’s in there unlawfully and he intends to commit that crime it’s capital murder. I mean there is no question he’s in there. I mean how can you say he’s in there with her permission to potentially maybe, I don’t know, sodomize her or beat her up and he’s in there with license to do that, that doesn’t compute.
 

 “THE COURT: Well, I guess that’s what I get paid for. I’ve seen so many cases reversed because the lesser-includ-eds were not in there but you put your finger on what I struggled with last night. I just can’t figure it any other way and so I’m not going to give any lesser-includeds and we’re just going to be up or down.
 

 “MS. MURPHREE: We’ll take it.
 

 “THE COURT: I’m sure you would.
 

 “MS. MURPHREE: And always when I say that, I mean I always struggle with it too, Judge, because I don’t want it reversed and I wouldn’t be making that argument if I felt that it was wrong.
 

 “THE COURT: That’s why we’re having this discussion because quite frankly y’all — I even woke up early this morning. Now, listen, time for talking is over.
 

 “MS. McGOWIN: Judge, I’m just trying to make my record and object for the record is all I want to do so this is preserved.
 

 “THE COURT: If I’m wrong, y’all have — we’ll try it again maybe.
 

 “MS. McGOWIN: I understand but for the record I have to do this and I object to the failure to give any lesser-includ-eds.”
 

 (Petition, pp. 4-9.)
 

 Hatfield argues that the charge-conference colloquy provided sufficient grounds to support his objections and that the issue was preserved for appellate review. To support his argument, Hatfield cites
 
 Toles v. State,
 
 854 So.2d 1171, 1173-74 (Ala.Crim.App.2002):
 

 “ ‘ “An objection ... should fairly and specifically point out the particular grounds on which an alleged error occurred in order to inform the trial judge of the legal basis of the objection, thereby affording the trial judge an opportunity to reevaluate his or her initial ruling in light of the grounds alleged and to change it, if deemed necessary.” ’
 

 “Covington v. State,
 
 620 So.2d 122, 127 (Ala.Crim.App.1993) (quoting
 
 Ex parte Webb,
 
 586 So.2d 954, 957 (Ala.1991)). This principle of appellate procedure certainly applies to alleged errors in charging the jury.
 
 See
 
 Rule 21.3, Ala. R.Crim. P. However, this Court has consistently reviewed issues, though in the technical sense not preserved by a proper objection at trial, where ‘[i]t is clear that the trial court understood the basis for the objection.’
 
 Covington v. State,
 
 620 So.2d at 127 (citing
 
 Ex parte
 
 
 *737
 

 McCall,
 
 594 So.2d 628, 631 (Ala.1991);
 
 Ex parte Pettway,
 
 594 So.2d 1196, 1200 (Ala.1991));
 
 Felder v. State,
 
 593 So.2d 121, 122-23 (Ala.Crim.App.1991); and
 
 Marshall v. State,
 
 570 So.2d 832, 834 (Ala.Crim.App.1990).
 

 “We find support for the proposition that Toles preserved his jury charge argument in
 
 Ex parte Weaver,
 
 763 So.2d 982 (Ala.1999). In
 
 Weaver,
 
 at the close of the jury charge, but before the jury retired to deliberate, the following exchange took place:
 

 “ ‘ “[Defense counsel]: What about on his right to remain silent and not testify and to have that not used against him? You didn’t give any instruction on that.
 

 “ ‘ “THE COURT: Well, it is not mandatory to give anything on that. It hasn’t been raised as an issue.
 

 ‘““[Defense counsel]: Well, he didn’t testify. I don’t think that—
 

 ““‘THE COURT: Well, you went through that in voir dire. It is too late now.
 

 “ ‘ “[Defense counsel]: I don’t think it’s too late. We object to it.
 

 ““‘THE COURT: Okay. Anything further?
 

 “ ‘ “[Prosecutor]: The State is satisfied.”
 

 “ ‘(R. 326-27.)’
 

 “Weaver,
 
 763 So.2d at 984. The State argued on appeal that Weaver’s claim that the trial court erred in refusing to give the requested jury instruction was not preserved for appellate review because, it argued, the objection was not sufficiently specific. The Alabama Supreme Court stated that Weaver ‘did not make a proper objection to the refusal of the requested charge.’
 
 Weaver,
 
 763 So.2d at 986. However, the Alabama Supreme Court, quoting
 
 Felder,
 
 stated:
 

 ‘ “Although the ‘magic words’ were never employed and although defense counsel should have been specific in stating the grounds of his objection, it is apparent that both defense counsel and the trial court understood [the objection to the jury charge].” ’
 
 Weaver,
 
 763 So.2d at 985 (quoting
 
 Felder v. State,
 
 593 So.2d 121, 122-23 (Ala.Crim.App.1991)).”
 

 In
 
 Ex parte Weaver,
 
 763 So.2d 982 (Ala.1999), and
 
 Toles,
 
 supra, the key factor in concluding that the defendants had preserved their arguments for appellate review was the fact that the trial court clearly understood the defendants’ objections and the grounds for the objections, even if the objections and the grounds could have been stated more clearly or specifically. In the present case, the Court of Criminal Appeals stated that Hatfield failed to state specific grounds for his objection. However, at the charge conference defense counsel discussed the elements of felony murder, argued classic prior felony-murder-case facts, and argued that the intent element should be a jury question. It is apparent from the quoted colloquy that the trial court understood the nature and grounds for Hatfield’s objection.
 

 In its unpublished memorandum, the Court of Criminal Appeals cites
 
 Bullock v. State,
 
 697 So.2d 66 (Ala.Crim.App.1997), as authority for finding that Hatfield’s claim was not preserved for appellate review. In
 
 Bullock,
 
 after a request for an instruction on manslaughter at the charge conference, the trial court refused to give the charge and stated its reasons for refusing the charge. In addition to failing to object, no grounds in support of the requested charge were made known to the trial court. The
 
 Bullock
 
 court cited Rule 21.3, Ala. R.Crim. P. However, the lack of objection in
 
 Bullock
 
 makes it clearly distinguishable from the present case.
 

 
 *738
 
 The purpose of Rule 21.3 is to ensure that requested charges are timely presented to the trial court and supported by sufficient evidence to enable the trial court to rule correctly. In the present case, the requested instruction on felony murder was timely presented to the trial court and the trial court and counsel discussed whether such a charge was appropriate under the facts of the case. Defense counsel was stating with particularity the grounds to support the request for the jury instruction on felony murder. Chief Justice Cobb’s special writing, while she was serving as a judge on the Court of Criminal Appeals, in
 
 Coleman v. State,
 
 870 So.2d 766, 768 (Ala.Crim.App.2003) (Cobb, J., concurring in part and concurring in the result in part), is persuasive on this point:
 

 “I believe that once the trial court heard the defense’s explanation for why it was entitled to the requested charge and then denied the request, no further discussion on the issue was necessary to preserve it for appellate review. I believe that the discussions preceding the denial were tantamount to, and understood by the trial court to be, an objection should the trial court refuse to give the requested charge. Otherwise, to follow Rule 21.3, Ala. R.Crim. P., to the letter would require the defense to advise the trial court of its grounds in support of a requested charge, then, should the charge be denied, object and repeat the grounds just offered in order to preserve the review of the denial on appeal.”
 

 The State concedes as to the sole issue raised in Hatfield’s petition for the writ of certiorari: it agrees that the issue whether the jury should have been charged on the lesser-included offense of felony murder was preserved for appellate review. However, the State argues that we should affirm the judgment of the Court of Criminal Appeals on a harmless-error theory, claiming there is no reasonable theory on which Hatfield can prevail on the merits of that issue. However, the merits of the issue were not raised in the petition for the writ of certiorari and were not addressed by the Court of Criminal Appeals; therefore, we decline to review the issue.
 
 See Ex parte Weddington,
 
 843 So.2d 750, 758 (Ala.2002) (holding that objections to jury instructions preserved an alleged error for appellate review, and reversing the judgment, but declining to review the merits of the issue). We reverse the judgment of the Court of Criminal Appeals and remand the cause for that court to address the merits of the issue Hatfield raised and adequately preserved concerning the jury instruction on the lesser-included offense of felony murder.
 

 REVERSED AND REMANDED.
 

 COBB, C.J., and LYONS, WOODALL, STUART, SMITH, PARKER, and MURDOCK, JJ., concur.
 

 SHAW, J., recuses himself.
 
 **